**Willie Lee SCOTT, on behalf of himself and all other persons similarly situated, and Gussie Heath**

**v.**

**T. M. PARHAM, Individually and in his capacity as acting Commissioner of the Georgia Department of Human Resources, et al.**

**Civ. A. No. C75–614A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 30, 1976.

John L. Cromartie, Jr., and Wayne M. Pressel, Atlanta, Ga., Robert W. Cullen, Augusta, Ga., for plaintiffs.

Timothy J. Sweeney, Asst. Atty. Gen., Atlanta, Ga., for Parham and Nolan.

Julian M. Longley, Asst. U. S. Atty., Carl H. Harper, Regional Atty., Alvin Jaffe, Asst. Regional Atty., Atlanta, Ga., for Mathews.

## ORDER

EDENFIELD, Chief Judge.

This action challenging the state and federal administration of the Vocational Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq., is before this court for a ruling on plaintiffs' motion for a preliminary and permanent injunction. In its order of December 2, 1975, 69 F.R.D. 324, this court tentatively certified this case as a class action, and on that same date, the court held an evidentiary hearing on plaintiffs' motions. In its order of March 31, 1976, the court found that the plaintiffs had established a prima facie case of unreasonableness in the state defendants' administrative guidelines and allowed the defendants an opportunity to present justification for such guidelines. The court is now prepared to certify the appropriate class and to make a final determination on the merits.

It is now apparent to the court that the class, as defined below, meets all of the requirements of Rule 23(a)(1–4), (b)(2), as outlined in this court's order of December 2. The court therefore CERTIFIES this case as a class action with the class defined as follows:

> "All individuals in the State of Georgia who are currently or will be in the future recipients of diagnostic and/or rehabilitative services of the Division of Vocational Rehabilitation of the Georgia Department of Human Resources, and who are not now receiving 'maintenance' payments, as defined in 15 C.F.R. § 1361.-1(m), from the Department."

The plaintiffs challenge the Georgia Department of Human Resources' guideline which provides maintenance only to those individuals receiving vocational rehabilitation and who live outside the home or home community, *Georgia Division of Rehabilitation Client Services Manual,* §§ 8.02, 8.04. The plaintiffs have argued that the federal Act and regulations mandate that maintenance must be made available to all those accepted into the rehabilitation program. In its last order, this court reviewed the Act and regulations in detail and concluded that

not all accepted individuals need to be provided with all available rehabilitative programs (for a list of the programs *see* 29 U.S.C. § 723(a)(1–11)), and that the state had fulfilled the mandatory requirements of the Act by making provision in its plans for, and in fact providing, maintenance to some rehabilitation clients. Moreover, the court found that the Act vests the state with reasonable discretion to determine which services shall be afforded to which individuals. The court must now decide whether the state's home/away from home classification is reasonable.

The plaintiffs contend that the reasonableness test is inappropriate here, since the court is determining whether there is compliance with a federal law, not whether the state has violated the Fourteenth Amendment's equal protection clause. The plaintiffs urge the court to strike down Georgia's maintenance guidelines because it adds a requirement—residence away from home—which is not contained in the federal Act. Such a view is overly simplistic. As pointed out in this court's last order, it was the intention of Congress to give the state considerable discretion in the allocation of maintenance funds. Obviously, the state must be able to establish certain rational guidelines to aid it in such allocation.

At the same time, the court refuses to adopt the defendant's suggestion that this case should be decided under the standards enunciated in such equal protection cases as *Jefferson v. Hackney,* 406 U.S. 535, 545–551, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972), and *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). In those cases, the court declined to second-guess the social and economic decisions of the states and impose on them its own policy judgments as to what was just and humane. Here, the question is whether *Congress* has already imposed certain policy judgments on the state through the language of the Vocational Rehabilitation Act. Thus, the court cannot merely defer to the judgment of state officials, but must determine whether the administrative generalization that maintenance need not be provided to

rehabilitation clients remaining at home is rationally related to the goals of the Act.

One of the paramount goals of the Act is to provide rehabilitation services which are tailored to each individual's needs. Section 721(a)(9) requires each state's plan to provide for "an individualized written rehabilitation program" for each handicapped individual. Such a provision was added to the Act because:

"... it became apparent that the individual client was not being sufficiently consulted on his own behalf in tailoring the rehabilitation program to his individual needs," 2 U.S.Code & Admin.News, p. 2097 (1973).

Moreover, § 721(a)(8) requires that certain services must be provided by the state and that others may be provided after considering eligibility for similar benefits under other programs, but that, in the case of maintenance, "such consideration shall not be required where it could delay the provision of such services to any individual." The committee which reported the bill "believe[d] that physical and mental restoration services and maintenance during rehabilitation are necessary and very important services, and wishe[d] to ensure that handicapped individuals will be provided these services as soon as possible," id. at p. 2096. It seems apparent, therefore, that Congress intended for the state plans to be administered in such a way that they would be able to respond to the particular needs of each individual. It is equally apparent that the Georgia program fails to do this. The home/away-from-home classification is an administratively convenient, and otherwise rational, distinction, but it robs the Georgia vocational rehabilitation program of its required flexibility. The guideline fails to account for such factors as (1) delay in the receipt of benefits under other programs, (2) the comparative financial resources of rehabilitation clients, and (3) the comparative demands of individual rehabilitation programs.

The defendants argue that only so much money is available, and point out that only those who meet certain need tests are granted away-from-home allotments. They argue, in essence, that all rehabilitation clients could use maintenance, but that those who must engage in programs away from home naturally encounter greater costs. In general, such a conclusion is probably correct, but the application of such a rule across the board fails to account for particularized cases of need. As this court pointed out in its last order, it can easily envision a handicapped individual who does not engage in specialized training away from home, but who could derive significantly more benefit from maintenance payments than some of those who do receive such training. The court also pointed out that a revision of the state's maintenance guidelines does not mean that the state must increase its total payments; it only requires that the state make such payments in a flexible manner, based upon individualized need.

Finally, the court wishes to emphasize that it is fully cognizant of the fact that an increased administrative burden will result from the elimination of a rigid home/away-from-home rule. The court does not believe that such a burden will be insurmountable, however, since numerous other states administer their rehabilitation programs without resorting to rigid, irrebuttable presumption of need. (See, e. g., the vocational rehabilitation plans for the states of Alabama, Mississippi, Tennessee and South Carolina.) Moreover, the state is still free to establish certain standards which will guide its officials in determining when need is appropriate, and it would not be unlikely that under such standards, those who received rehabilitation training away from home would have a greater chance to receive maintenance grants than those who remained at home.

The court therefore GRANTS plaintiffs' motion for a permanent injunction and hereby ENJOINS the state defendants from enforcing §§ 8.02, 8.04 in the administration of their vocational rehabilitation program. The court STAYS enforcement of this judgment, however, for a reasonable time within which the state defendants may

propose alternative policy guidelines for approval by the Department of Health, Education and Welfare. The state defendants are ALLOWED ten (10) days within which to submit to the court an estimate of the time it will take to revise the program, and to receive approval from HEW. The court will DEFER ruling on plaintiffs' request for an order requiring defendants to establish a procedure whereby rehabilitation recipients may be notified of the availability of maintenance benefits until the defendants have revised their current guidelines.

So ORDERED, this 30th day of June, 1976.