Ruth Ann **SCHORNSTEIN**, Plaintiff,

v.

The **NEW JERSEY DIVISION OF VOCATIONAL REHABILITATION SERVICES; George Chizmadia, in his official capacity as Director of the New Jersey Division of Vocational Rehabilitation Services; Kean College of New Jersey; and Dr. Nathan Weiss, in his official capacity as President of Kean College of New Jersey, Defendants.**

Civ. A. No. 80–2500.

United States District Court,
D. New Jersey.

Aug. 5, 1981.

National Association for the Deaf Legal Defense Fund by Elaine Gardner, and Larry Goldberg, Washington, D. C. and Cole, Berman & Belsky, by Thomas J. LaConte, Rochelle Park, N. J., for plaintiff.

James A. Zazzali, Atty. Gen., of N. J., by Michael S. Bokar, and Robert A. Fagella, Deputy Attys. Gen., Division of Law, Trenton, N. J., for defendants.

## OPINION

STERN, District Judge.

Plaintiff is a deaf woman attending college in New Jersey. As a participant in the state's vocational rehabilitation program she receives state and federal funds for her tuition, books, and transportation. She brings this suit to require the state further to provide her with interpreter services, without which her other benefits will be useless.

### I. Facts and Procedural History

Under federal law a state may receive federal financial assistance to administer and maintain an approved vocational rehabilitation program. New Jersey has chosen to develop such a program, and defendant New Jersey Division of Vocational Rehabilitation Services ("NJDVRS") is the agency which administers the program, using in part funds provided by the federal Rehabilitation Services Administration ("RSA").[1]

---

1. Under the reorganization brought about by the formation of the Department of Education, the functions of the Rehabilitation Services Administration have been transferred to the Office

Plaintiff Ruth Ann Schornstein is a deaf person and is therefore severely handicapped within the meaning of sections 7(7)[2] and 7(13)[3] of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–794 (the "Act"). In August 1978 she applied for admission to defendant Kean College ("Kean"), a New Jersey state college which receives federal financial assistance. As a condition to receiving that assistance, Kean has agreed to comply with section 504 of the Act, 29 U.S.C. § 794,[4] and its implementing regulations, 45 C.F.R. §§ 84.41–84.47. Kean admitted plaintiff for the spring semester of 1979.

After gaining admission to Kean, plaintiff applied to NJDVRS for assistance. She stated her intention to earn a college degree in social work and psychology, and to become thereafter a teacher of the handicapped. NJDVRS determined that plaintiff was eligible[5] for vocational rehabilitation services,[6] and selected her to receive such services. NJDVRS agreed, beginning in January 1980, to pay plaintiff's tuition at Kean, and to provide her with books and the cost of her transportation.

On April 19, 1979, plaintiff, through her counsel, wrote a letter to Kean requesting that the college provide plaintiff with a sign language interpreter. See Complaint, Exh. I. Plaintiff contends, and defendants agree, that plaintiff requires interpreter services to participate effectively in her classes.[7] On May 16, 1979, Mr. Ray Ford, assistant to the President of Kean, advised plaintiff's attorney by telephone that the college would not furnish an interpreter. A second request for such services, made on January 17, 1980, was also refused.

When Kean initially refused to provide interpreter services, plaintiff applied to and received funds for those services from the New Jersey Division of the Deaf, an agency of the state Department of Labor and Industry. The Division of the Deaf provided

---

of the Special Education and Rehabilitation Services in the Department of Education. Department of Education Organization Act, P.L.No. 96–88, § 207, 93 Stat. 668, 674 (1979).

2. Section 7(7) of the Act, 29 U.S.C. § 706(7), provides in pertinent part:

   (A) Except as otherwise provided in subparagraph (B), the term "handicapped individual" means any individual who (i) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (ii) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services provided pursuant to subchapters I and III of this chapter.

3. Section 7(13) of the Act, 29 U.S.C. § 706(13), provides in pertinent part:

   The term "severe handicap" means the disability which requires multiple services over an extended period of time and results from ... deafness....

4. 29 U.S.C. § 794 provides in pertinent part:

   No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

5. 45 C.F.R. § 1361.1(f) provides in pertinent part:

   "Eligible" or "eligibility" when used in relation to an individual's qualification for vocational rehabilitation services, refers to a certification that:

   (1) The individual has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment; and

   (2) Vocational rehabilitation services may reasonably be expected to benefit the individual in terms of employability.

6. See 45 C.F.R. § 1361.1(ee)(1), which provides:

   "Vocational rehabilitation services," when provided to an individual, means:

   .    .    .    .    .

   (viii) Interpreter services for the deaf ....

7. See Tr. of July 23, 1981, at 5:

   Ms. Gardner: ... I'd just like to confirm the fact there is no issue of fact in this case and the defendants have agreed that Miss Schornstein needs an interpreter to benefit from their programs. That is not clear from the pleadings.

   Mr. Bokar: Your Honor, for purposes of these cross-motions for summary judgment, the State will concede that Miss Schornstein has a need for an interpreter while attending classes at Kean College.

sufficient funds to cover interpreter services for the summer and fall semesters of 1979 and the spring semester of 1980. On March 28, 1980, plaintiff's counsel was advised by telephone that the Division of the Deaf would no longer provide funds for interpreters for deaf college students because of financial constraints.

Plaintiff then contacted NJDVRS and requested that it provide her with interpreter services. On June 3, 1980, defendant George Chizmadia, Director of NJDVRS, advised plaintiff's counsel by telephone that the agency would not provide interpreter services. The refusal was based on a written policy of NJDVRS not to provide sign language interpreters to deaf and hearing-impaired vocational rehabilitation clients who are students at federally-assisted colleges. NJDVRS's Counselor's Policy and Procedural Manual, College Sponsorship Section, Interpretation and Attendants Subsection (January, 1980), states:

> Provision of Interpreters for the Deaf and attendants for the physically disabled is the responsibility of the college under Section 504 of the 1973 Rehabilitation Act. *The New Jersey Division of Vocational Rehabilitation Services will, therefore, no longer provide the cost of these services.* The only exceptions are cases in which we are currently paying for one of these services. In these cases, every effort must be made and documented by the Counselor to secure funding from the college. If these attempts are not met with success, we will continue to pay rather than interrupt the client's program.

(Emphasis in original.) See Complaint, Exh. III. This policy has been in effect from the time that plaintiff entered Kean College.

Because of her inability to receive funds from Kean, NJDVRS, or the State Division of the Deaf, plaintiff was forced to withdraw from Kean's 1980 summer semester, which commenced on June 23, 1980.

On August 6, 1980, she commenced this action. She alleges that the failure of defendant NJDVRS and its director Chizmadia to provide her with interpreter services is in violation of Title I of the Act,[8] section 504 of the Act,[9] and the equal protection clause of the Fourteenth Amendment. She also alleges that the failure of defendant Kean and its president, Dr. Nathan Weiss, to provide the same services is in violation of section 504 of the Act and the equal protection clause.

At the same time plaintiff filed a motion for a preliminary injunction to require defendants to provide interpreter services for the semester beginning in September 1980. Before the application was heard on the merits, the parties entered into a consent order under which the state agreed to provide plaintiff with interpreter services for the fall semester and plaintiff agreed to reimburse the State for the cost of those services if defendants prevailed on the merits.

The parties filed cross-motions for summary judgment returnable in January 1981, prior to the commencement of Kean's spring semester. At the hearing of that motion, on January 16, 1981, the Court's attention was directed to *University of Texas v. Camenisch, cert. granted,* 449 U.S. 1073, 101 S.Ct. 853, 66 L.Ed.2d 797 (1980), a case presenting similar issues in which the Supreme Court had recently granted certiorari. The parties agreed to postpone a determination of the pending motions until the Supreme Court had acted in *Camenisch,* and agreed to continue the terms of the prior consent order through the spring semester of 1981.

Three months later, the Supreme Court decided the *Camenisch* case, —— U.S. ——, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), without reaching the merits of the issues raised here. The parties have thus renewed their cross-motions for summary judgment.

---

**8.** Plaintiff relies primarily on the provision in Title I which defines the scope of vocational rehabilitation services, 29 U.S.C. § 723(a). *See* note 12 *infra.*

**9.** *See* note 4 *supra.*

Plaintiff is not attending Kean's 1981 summer semester, but seeks to have defendants provide her with services for the fall semester, which commences on September 3, 1981.

## II. NJDVRS's Obligations Under Title I of the Act

### A. Introduction

Title I of the Rehabilitation Act of 1973 authorizes grants to assist states in meeting the current and future needs of handicapped individuals, so that those individuals may prepare for and engage in gainful employment to the extent that they are capable. 29 U.S.C. § 720(a). Participation by a state in the federal grant program is voluntary, but states which elect to receive federal funds must satisfy certain conditions. Under Part A of Title I, each participating state must submit to the Commissioner of RSA a state plan for vocational rehabilitation services for a three-year period. 29 U.S.C. § 721(a). Part A also specifies the contents of each state plan, *id.*, and requires the Commissioner to ensure that an individualized written rehabilitation program for each handicapped individual be developed jointly by the vocational rehabilitation counselor or coordinator and the handicapped individual. 29 U.S.C. § 722(a).[10] Each individualized written rehabilitation program must contain, at a minimum:

(1) a statement of long-range rehabilitation goals for the individual and intermediate rehabilitation objectives related to

the attainment of such goals, (2) a statement of the specific vocational rehabilitation services to be provided, (3) the projected date for the initiation and the anticipated duration of each such service, [and] (4) objective criteria and an evaluation procedure and schedule for determining whether such objectives and goals are being achieved. . . .

29 U.S.C. § 722(b). Finally, section 103(a) of the Act defines the scope of vocational rehabilitation services provided to individuals under Title I as any goods and services necessary to render a handicapped individual employable. 29 U.S.C. § 723(a). That section gives a non-exclusive list of such goods or services. One of the services specifically enumerated is "interpreter services for deaf individuals." [11]

Plaintiff contends that section 103(a)(6) *requires* state vocational rehabilitation agencies receiving federal grants under Title I to provide interpreter services to all of its deaf clients who require such services. Defendant NJDVRS contends that its policy which bars provision of interpreter services to deaf college students is consistent with Title I of the Act. It further contends that even if the policy as a whole is in error, the agency may, in its discretion, refuse to provide the services to Ms. Schornstein.[12]

### B. NJDVRS's Policy Not to Provide Interpreters

Plaintiff was denied interpreter services in accordance with NJDVRS's policy

---

**10.** 29 U.S.C. § 722(a) provides:

The Commissioner shall insure that the individualized written rehabilitation program . . . is developed jointly by the vocational rehabilitation counselor or coordinator and the handicapped individual . . . and that such program meets the requirements set forth in subsection (b) of this section . . .

**11.** Section 103(a) of the Act, 29 U.S.C. § 723(a), provides:

Vocational rehabilitation services provided under this chapter are any goods or services necessary to render a handicapped individual employable, including, but not limited to, the following:

.     .     .     .     .

(6) interpreter services for deaf individuals.

*See also* 45 C.F.R. § 1361.1(ee), *quoted in* note 6 *supra.*

**12.** The question whether Title I gives rise to a private cause of action is not before the Court. Although one court has held that no private cause of action for damages is implied by Title I, *Jones v. Illinois Dept. of Rehabilitation Services,* 504 F.Supp. 1244 (N.D.Ill.1981), defendants here have conceded in open court that the Act permits plaintiff to bring the cause of action which she asserts here. Tr. of July 23, 1981, at 3. This Court in any event would hold that, regardless of whether Title I implies a private cause of action for damages, the statute does provide for private actions to enforce compliance with the Act. Such actions assist the RSA in enforcing the Act and ensuring that handicapped people receive the benefits to which they are entitled.

against providing such services to *any* deaf college student which the agency has accepted as a client, except those students receiving such services at the time the policy went into effect. According to the agency's Counselor's Policy and Procedural Manual, defendant instituted that policy because it believed that colleges receiving federal funds must provide interpreter services to deaf students when necessary, under section 504 of the Act. Defendant Kean, as noted above, denies that it has any such responsibility under section 504.

Plaintiff contends that this general policy, which precludes an entire category of handicapped persons from receiving necessary services, violates the requirements of Title I of the Act.

Both the language and the legislative history of the Act make clear that participating states are required to develop programs designed to meet the particular needs of each qualifying handicapped person. The Act specifically requires the state to develop individualized written rehabilitation programs in consultation with each handicapped individual, *see* note 11 *supra*, and to "set forth the terms and conditions, as well as the rights and remedies" for the provision of services to each participant. 29 U.S.C. § 722(a). The need for individual consultation was stressed in the Senate Report preceding passage of the Act:

> After hearing extensive testimony and reviewing the data supplied to the Committee by the Department of Health, Education and Welfare, it became apparent that the individual client was not being sufficiently consulted on his own behalf in tailoring the rehabilitation program to his individual needs. This concern led to the adoption in section 102 of the bill of the formal written rehabilitation program requirement for every individual who is served under the vocational rehabilitation program....
>
> It is the purpose of the Committee, in requiring an individualized written rehabilitation program, to assure that each handicapped individual has an opportunity to participate in the decisionmaking

regarding services he is or is not to receive; to have a written understanding that specifies the services to be provided and the objectives they are to achieve; to be able to obtain information on the progress he is making with regard to the objectives of the program; and to rewrite jointly with the rehabilitation agency the program when it is apparent that the stated objectives cannot be achieved. In order to ensure that such individuals are not refused services when they could be beneficial, it must be demonstrated beyond a reasonable doubt that the individual cannot achieve a vocational goal, before the individual can be determined ineligible for services because he has no vocational potential. Such a decision must be made with the full consent of the individual and full documentation on this decision must be included in the written program developed for him.

S.Rep.No. 318, 93rd Cong., 1st Sess., *reprinted in* [1973] U.S.Code Cong. & Ad. News 2076, 2097–98 (hereinafter "Senate Report").

The courts have also recognized this need. In *Scott v. Parham*, 422 F.Supp. 111 (N.D. Ga.1976), plaintiffs brought suit under Title I on behalf of a class of handicapped persons living at home to challenge the Georgia Department of Human Resources' guidelines which provided maintenance only to individuals receiving vocational rehabilitation who lived outside the home or home community. Maintenance, like interpreter services, is one of the *vocational rehabilitation* services expressly enumerated in the Act. 29 U.S.C. § 723(a)(5). The Court held that the agency guidelines were impermissible:

> It seems apparent ... that Congress intended for the state plans to be administered in such a way that they would be *able to respond to the particular needs of each individual.* It is equally apparent that the Georgia program fails to do this. The home/away-from-home classification is an administratively convenient, and otherwise rational distinction, but it robs the Georgia vocational rehabilitation pro-

gram of its required flexibility. The guideline fails to account for such factors as (1) delay in the receipt of benefits under other programs, (2) the comparative financial resources of rehabilitation clients, and (3) the comparative demands of individual rehabilitation programs.

422 F.Supp. at 113. *See also Battle v. Commonwealth of Pennsylvania,* 629 F.2d 269 (3rd Cir. 1980) (fixed limit on number of days of instruction for all children, including those who are handicapped, was insufficiently flexible to meet the requirements of the Education for All Handicapped Children Act, 20 U.S.C. §§ 1401–20).

■ The blanket policy adopted by the NJDVRS denies interpreter services to *every* deaf college student. This policy completely contradicts the Act's requirements which ensure individualization of programs for handicapped individuals. Moreover, unlike the classification challenged in *Scott v. Parham,* which the court classified as "otherwise rational," the classification here is based on a presumption which this lawsuit has shown to be false. The agency has presumed that the college, in this case another arm of the State of New Jersey, is obligated to provide interpreter services. Whatever the legal merit of this position, the New Jersey Attorney General, on behalf of *both* state instrumentalities, has denied that any state agency or college has any such obligation under either Title I or section 504.

Accordingly, we hold that NJDVRS's blanket policy that it will not provide interpreter services to deaf college students violates Title I of the Act.

## C. *Plaintiff's Right to an Interpreter*

There remains the question whether defendants may deny plaintiff interpreter services, even if it may not exclude all deaf students *per se.* NJDVRS contends that the services which it provides to any of its clients are within its sole discretion.

■ The discretion of the state agency to determine how many persons it can accept into its programs is made clear by the Act, 29 U.S.C. § 721(a)(5)(A)(i), but the Act requires that priority be given to "severely" handicapped individuals. Under the Act deaf persons are "severely" handicapped and thus must be given priority in selection for the provision of vocational rehabilitation services. *See* note 3 *supra.* Once the agency has accepted a handicapped individual as a client, the scope of its discretion narrows considerably. The agency is required to provide the client at least with those services enumerated in the Act which are necessary to assist the handicapped person to achieve his or her vocational goal. 29 U.S.C. § 723. The mandatory nature of the Act was made clear in the Senate Report:

> The bill directs the State to provide as mandatory services under the State plan evaluation of rehabilitation potential, counseling, guidance, referral, placement, vocational and other training services and related family services *and to provide the remainder of all vocational rehabilitation services after consideration of eligibility for similar programs.*

Senate Report, *supra,* [1973] U.S.Code Cong. & Ad.News at 2096 (emphasis supplied). The Report further states that "[t]he scope of services that are *required* under the bill and the services which may be provided are specified in section 103 ...." *Id.* at 2098 (emphasis supplied). Thus, section 103(a) enumerates mandatory services, including interpreters for deaf individuals, and section 103(b) lists services which the state agencies *may* provide. Provision for the mandatory services required by section 103(a) must be included in the three-year plan submitted by the state to RSA.[13]

13.  29 U.S.C. § 721(a) provides:

In order to be eligible to participate in programs under this subchapter, a State shall submit to the Commissioner a State plan for vocational rehabilitation services for a three-year period and, upon request of the Com-

missioner, shall make such annual revisions in the plan as may be necessary. Each such plan shall—

.    .    .    .    .

(8) provide, at a minimum, for the provision of the vocational rehabilitation services

■ Thus, an agency which receives federal funds under Title I must provide its clients with at least those services enumerated in section 103(a) which are necessary to the achievement of vocational goals. The inclusion of interpreter services in this list was neither casual nor incidental. The Senate Report points out the essential nature of interpreter services to deaf people:

> During hearings, the Committee was told that rehabilitation services do not always meet the needs of deaf individuals. Quite often, counselors are not available who can communicate with deaf clients, and services for individuals with severe communication disorders designed to deal comprehensively with the individuals' total needs are seldom provided. Witnesses from the deaf community also reported to the Committee that there were limited training options available for deaf individuals who leave secondary schools with no technical skills and thus have great difficulty finding employment. The Committee, therefore, emphasizes the need for improvement of services to deaf individuals who are 16 years of age or older who have passed the age of compulsory school attendance for the State in which they reside.

Senate Report, *supra*, [1973] U.S.Code Cong. & Ad.News at 2110–11.

This requirement, like the other enumerated requirements, is not completely inflexible. The state may, if it wishes, "consider the financial need of handicapped individuals for purposes of determining the extent of their respective participation in the costs of vocational rehabilitation services...." 45 C.F.R. § 1361.45. If a state pursues this course it must establish a written policy specifying the types of services to which an

"economic needs" test will be applied. *Id.* In addition, the state must seek out "similar benefit" programs which provide alternative sources of funding for services enumerated in section 103. 29 U.S.C. § 721(a)(8). Only if a "similar benefit" program provides the necessary services for a particular client is the state vocational rehabilitation agency relieved of its statutory responsibility.

In this case, the state defendants have offered no evidence that NJDVRS has adopted an "economic needs" test with respect to interpreter services for deaf people, or that plaintiff has the financial abilities to pay for the services on her own. To the contrary, NJDVRS has paid for and will continue to pay for plaintiff's tuition, books, and transportation. Nor have defendants shown that plaintiff is eligible for interpreter services under "similar benefits" programs.

■ Defendant NJDVRS, having accepted plaintiff as a client, and having conceded that plaintiff requires interpreter services to meet her vocational goals, is obligated to provide those services. Accordingly, plaintiff's application for an order requiring NJDVRS to provide her with interpreter services for her classes at Kean will be granted.[14]

---

specified in clauses (1) through (3) of subsection (a) of section 723 of this title, and the remainder of such services specified in such section after full consideration of eligibility for similar benefits under any other program....

New Jersey's plan complied with this provision by listing the services, including "Interpreter services for the deaf," which NJDVRS would provide to its clients "as needed." New Jersey State Plan for Vocational Rehabilitation Services, *reprinted in* plaintiff's brief in opposition to defendants' motion for summary judgment, App. B.

14. In view of our holding that plaintiff is entitled to interpreter services under Title I of the Act, we need not decide whether defendant Kean or defendant NJDVRS would otherwise have an obligation to provide such services under section 504 of the Act. Nor do we need to reach plaintiff's claim under the Fourteenth Amendment to the Constitution.