

# The Attorney General of Texas

December 2, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Vernon M. Arrell
Commissioner
Texas Rehabilitation Commission
118 E. Riverside Drive
Austin, Texas    78704

Opinion No.   JM-388

Re: Whether a client of the Texas Rehabilitation Commission is ineligible for benefits under the Hinson-Hazelwood Act, section 54.203 of the Texas Education Code

Dear Mr. Arrell:

You have requested an opinion on the following question:

> Is a disabled Texan denied state educational benefits provided in Subsection (a) of the Hinson-Hazelwood College Student Loan Act (section 54.203 of the Education Code) solely because of the individual's status as a client of the Texas Rehabilitation Commission under the federal Rehabilitation Act of 1973, as amended?

The Hinson-Hazelwood Act exempts certain veterans and their dependents from payment of fees at public institutions of higher education. Educ. Code §54.203. The exemption from payment of fees does not apply, however, to persons who are eligible for certain types of federal aid:

> The exemption from fees provided for in Subsection (a) of this section does not apply to a person if at the time of his registration he is eligible for educational benefits under federal legislation in effect at the time of his registration. A person is covered by the exemptions if his **right** to benefits under federal legislation is extinguished at the time of his registration. (Emphasis added).

Educ. Code §54.203(d).

You ask whether a veteran is ineligible for benefits under the Hinson-Hazelwood Act if he is a client of the Texas Rehabilitation Commission [hereinafter TRC]. Although the joint state-federal funds available to TRC under the federal Rehabilitation Act of 1973 could

possibly be used to pay fees at an institution of higher education for a client of TRC, we do not think that clients of TRC are within the scope of subsection (d) of section 54.203. Thus, in our opinion, a veteran is not ineligible for benefits under the Hinson-Hazelwood Act simply because of his status as a client of TRC.

TRC administers a joint state-federal vocational rehabilitation program pursuant to the Rehabilitation Act of 1973 and its amendments. 29 U.S.C. §§701 through 751. To be eligible to receive federal funds under that act a state must submit a three-year plan to the federal office that administers the act. 29 U.S.C. §721. The plan must

> contain the plans, policies, and methods to be followed in carrying out the State plan and in its administration and supervision, including a description of the method to be used to expand and improve services to handicapped individuals with the most severe handicaps and a description of the method to be used to utilize existing rehabilitation facilities to the maximum extent feasible; and, in the event that vocational rehabilitation services cannot be provided to all eligible handicapped individuals who apply for such services, show (1) the order to be followed in selecting individuals to whom vocational rehabilitation services will be provided, and (2) the outcomes and service goals, and the time within which they may be achieved, for the rehabilitation of such individuals, which order of selection for the provision of vocational rehabilitation services shall be determined on the basis of serving first those individuals with the most severe handicaps and shall be consistent with priorities in such order of selection so determined, and outcome and service goals for serving handicapped individuals, established in regulations prescribed by the Commissioner.

29 U.S.C. §721(a)(5)(A).

The act also provides that a counselor together with the handicapped person shall develop an "individualized written rehabilitation program" for each handicapped person eligible for vocational rehabilitation services. 29 U.S.C. §§721(a)(9), 722. The individualized program shall include:

> (1) a statement of long-range rehabilitation goals for the individual and intermediate rehabilitation objectives related to the attainment of such goals, (2) a statement of the specific

> vocational rehabilitation services to be provided, (3) the projected date for the initiation and the anticipated duration of each such service, (4) objective criteria and an evaluation procedure and schedule for determining whether such objectives and goals are being achieved, and (5) where appropriate, a detailed explanation of the availability of a client assistance project established in such area pursuant to section 732 of this title. (Emphasis added).

29 U.S.C. §722(b).

The act requires the state to provide to a client any of the following services that are necessary to render the client employable:

> (1) evaluation of rehabilitation potential, including diagnostic and related services, incidental to the determination of eligibility for, and the nature and scope of, services to be provided, including, where appropriate, examination by a physician skilled in the diagnosis and treatment of mental or emotional disorders, or by a licensed psychologist in accordance with State laws and regulations, or both;

> (2) counseling, guidance, referral, and placement services for handicapped individuals, including follow-up, follow-along, and other post-employment services necessary to assist such individuals to maintain their employment and services designed to help handicapped individuals secure needed services from other agencies, where such services are not available under this chapter;

> (3) vocational and other training services for handicapped individuals, which shall include personal and vocational adjustment, books, and other training materials, and services to the families of such individuals as are necessary to the adjustment or rehabilitation of such individuals:

> Provided, that no training services in institutions of higher education shall be paid for with funds under this subchapter unless maximum efforts have been made to secure grant assistance, in whole or in part, from other sources to pay for such training. . . . (Emphasis added).

29 U.S.C. §723. See 29 U.S.C. §721(8) (requiring the states to provide the services set out in section 723(1) through (3)).

In summary, once TRC accepts a handicapped person as a client, individual rehabilitation goals are set for the client. TRC then provides services or assists the client in obtaining services necessary for the client to achieve those goals. Because training at an institution of higher education might be a necessary service for a particular client, TRC could use its funds to pay fees at an institution of higher education. Such payments, however, are a low-priority use of TRC's funds. Indeed, the federal act directs TRC to make "maximum efforts" to find other sources for payment of such fees. 29 U.S.C. §723(a)(3). Thus, even if a client of TRC needed training at an institution of higher education because of his individual rehabilitation plan, TRC would clearly have fulfilled its obligation to that client if it assisted him in obtaining such training under some other program. See Schornstein v. New Jersey Division of Vocational Rehabilitation, 519 F.Supp. 773 (D.N.J. 1981), aff'd, 688 F.2d 824 (3rd Cir. 1982) (regarding entitlement to services under the Rehabilitation Act of 1973).

We do not think that this possibility of payment of fees out of joint state-federal funds is the type of "eligibility" for federal educational benefits at which subsection (d) of the Hinson-Hazelwood Act was directed. The original language of that provision stated that the exemption from the payment of fees did not apply to persons eligible for educational benefits

> under Public Law No. 16, 78th Congress, or amendments thereto, or under Public Law No. 346, 78th Congress [popularly known as the 'G.I. Bill'], or amendments thereto, or under any other Federal legislation. . . .

Acts 1945, 49th Leg., ch. 338, at 553. The present language of section 54.203(d) comes from the nonsubstantive recodification of the laws dealing with higher education. Acts 1971, 62nd Leg., ch. 1024, at 3118, 3319. The two pieces of federal legislation mentioned in the original version of section 54.203(d) both gave certain persons an absolute right to federal educational benefits. The purpose of exempting persons entitled to such educational benefits from the benefits of the Hinson-Hazelwood Act was to allow colleges to receive tuition payments from the federal government. See Attorney General Opinion V-688 (1948) (once a veteran has exhausted G.I. benefits, he is entitled to the benefits of the Hinson-Hazelwood Act). If the students who were otherwise entitled to federal tuition payments were exempt from such payments, the federal money would be lost to the state of Texas.

The federal funds the state of Texas receives under the Rehabilitation Act of 1973 are not analogous to funds paid by the federal government under the G.I. Bill or similar federal legislation. First, as we discussed above, a client of TRC has no right to payment of fees at an institution of higher education simply because of his status as a client. Also, one purpose of the federal Rehabilitation Act is to insure efficient allocation of resources. Therefore, the act directs TRC to assist its clients in finding benefits available under other programs. See 29 U.S.C. §§721(8) and 723(a)(3). Finally, federal money that TRC would "save" by directing its clients to other sources of rehabilitation services is not lost to the state of Texas. Rather, TRC could use that money to provide other services to the same client or to provide services to other clients.

In our opinion the exemption set out in subsection (d) of the Hinson-Hazelwood Act does not apply to someone simply because he is a client of TRC.

## S U M M A R Y

A person is not automatically ineligible for benefits under the Hinson-Hazelwood Act, section 54.203 of the Texas Education Code, because of his status as a client of the Texas Rehabilitation Commission.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton
Sarah Woelk