Filed 8/5/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff and Appellant,<br><br>      v.<br><br>DEPARTMENT OF<br>REHABILITATION,<br><br>    Defendant and Respondent. | G062519<br><br>(Super. Ct. No. 30-2022-01285384)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge. (Retired Judge of Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed and remanded.

John Doe, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown, Summer Bosse and Jacquelyn Young, Deputy Attorneys General, for Defendant and Respondent.

This appeal concerns the proper interpretation of the term "maintenance" under Title I of the Rehabilitation Act of 1973, as amended (Pub.L. No. 93-112 (Sept. 26, 1973) 87 Stat. 355, 29 U.S.C. § 701 et seq.; the Act), and related California law. Under the Act, the federal government provides grants to participating states, including California, to help fund vocational rehabilitation services for individuals with disabilities. In California, those services are provided by the Department of Rehabilitation (the Department). John Doe is a recipient of such services. The Department agreed to cover Doe's law school tuition and other expenses, but it refused to pay his rent while he attended a school that was outside of commuting distance from his home. Doe argued rent qualified as "maintenance," a covered expense under the Act and California law. But the Department, while interpreting the same statutes and regulations as Doe, determined the law prohibited it from paying Doe's rent, which it deemed to be a noncovered "long-term everyday living expense."

An administrative law judge (ALJ) upheld the Department's decision, and a trial court denied Doe's petition for writ of mandate. Both the ALJ and the court found that rent was allowable as "maintenance" only for short-term shelter, and not for a term of three years, which was deemed to be long term.

We reverse. Under the Act, vocational rehabilitation services include "maintenance for additional costs incurred" while receiving such services. (29 U.S.C. § 723(a)(7).) California law similarly provides for "[m]aintenance, not exceeding the additional costs incurred while participating in rehabilitation." (Welf. & Inst. Code, § 19150, subd. (a)(8).) To determine if a cost can be covered as "maintenance," the question is whether the cost is in excess of normal expenses and tied to receiving other vocational

2

rehabilitation services—not whether the cost is short- or long-term. Accordingly, the matter shall be remanded so the Department can reconsider Doe's request under the proper definition of "maintenance."

LEGAL BACKGROUND

I.

VOCATIONAL REHABILITATION SERVICES UNDER THE ACT

Title I of the Act concerns "Vocational Rehabilitation Services." A main purpose of the Act is "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society through [¶] (A) statewide workforce development systems . . . [and] programs of vocational rehabilitation." (29 U.S.C. § 701(b).) Under the Act, the federal government grants money to participating states to help them provide vocational rehabilitation services to individuals with disabilities. (29 U.S.C. §§ 720(a)–(b), 723(a).)

To participate, a state submits a plan stating how it will develop "individualized plan[s] for employment" (IPE) for individuals with disabilities and representing it will provide the services outlined in the IPEs. (29 U.S.C. § 721(a)(9).) If the plan is approved, the state can receive up to about four-fifths of the cost of providing vocational rehabilitation services, subject to annual caps. (29 U.S.C. §§ 705(14), 721(a)(3), 730.)

An IPE must be in writing and signed on behalf of the state and the individual who is eligible to receive vocational rehabilitation services. (29 U.S.C. § 722(b)(3)(A), (C).) An IPE must "afford[ ] eligible individuals the opportunity to exercise informed choice in selecting an employment outcome, the specific vocational rehabilitation services to be provided under the plan, the entity that will provide the vocational rehabilitation services, and the methods used to procure the services." (29 U.S.C. § 722(b)(3)(B).) To that end,

an IPE must, among other things, specifically describe: (1) the individual's chosen employment outcome (29 U.S.C. § 722(b)(4)(A)); (2) the vocational rehabilitation services needed to achieve that outcome (29 U.S.C. § 722(b)(4)(B)); and (3) the terms and conditions of the IPE, including, as appropriate, the respective responsibilities of the parties to the IPE (29 U.S.C. § 722(b)(4)(E)).

Twenty specific categories of vocational rehabilitation services are enumerated in the Act. (29 U.S.C. § 723(a).) They include, for example, an assessment of eligibility and needs; counseling and guidance; help in securing services from other agencies; job search, placement, and retention services; vocational and other training services; financial support for diagnosis and treatment of physical and mental impairments; transportation; personal assistance services; interpreter services; supported employment services; customized employment; services to the family of an eligible individual that are necessary to achieve the individual's employment outcome; and "maintenance for additional costs incurred . . . while receiving services under an [IPE]." (29 U.S.C. § 723(a).)[1] One example of maintenance is "[t]he cost of short-term shelter that is required in order for an individual to participate in vocational training at a site that is not within commuting distance of an individual's home." (34 C.F.R. § 361.5(b)(34) (2022).) As a catchall provision, the federal implementing regulations include a twenty-first category: "Other goods and services determined necessary for the individual with a disability to achieve an employment outcome." (34 C.F.R. § 361.48(b)(21) (2022).)

---

[1] Some categories of services are available only when tied to other needed services. (See, e.g., 29 U.S.C. § 723(a)(8)–(9).)

A participating state need not accept all eligible individuals into its vocational rehabilitation program. (29 U.S.C. § 721(a)(5) [order of selection of eligible individuals for services].) But once an individual is accepted as a client, "the scope of [the state agency's] discretion narrows considerably. The agency is required to provide the client at least with those services enumerated in the Act which are necessary to assist the [eligible] person to achieve his or her vocational goal." (*Schornstein v. New Jersey Division of Vocational Rehabilitation Services* (D.N.J. 1981) 519 F. Supp. 773, 779; 29 U.S.C. § 723(a).)

## II.

## CALIFORNIA AS A PARTICIPATING STATE

As a participating state, California requires that its vocational rehabilitation program "be consistent with the national policy toward people with disabilities articulated in . . . [the Act]." (Welf. & Inst. Code, § 19000, subd. (c).) The Department is the California agency responsible for providing vocation rehabilitation services to its clients (eligible individuals accepted into the program) and promulgating necessary rules and regulations. (Welf. & Inst. Code, §§ 19005.1, 19006; 19016; see also 29 U.S.C. § 721 [State plan shall contain plans, policies, and methods to carry out goal].)

California's statute largely tracks the language of the Act. It calls for a written IPE, developed and agreed to by the eligible individual (or representative) and the Department. (Welf. & Inst. Code, § 19104, subd. (b).) "[C]onsistent with federal law," the Department "shall," with full participation by the eligible individual, identify the available service options to achieve the individual's selected employment goals and outcomes, and possible alternatives thereto, with those choices incorporated into the IPE. (*Id.*, § 19104.5, subds. (a)–(b).) The IPE must "[c]ontain all of the information

5

required by federal law and regulations, including a statement of the specific vocational goods and services . . . to be provided and the terms and conditions under which available goods and services will be provided, to the extent federal funds are available, to the individual[.]" (*Id.*, § 19104, subd. (b)(3).)

Similar to the Act, California lists the available vocational rehabilitation services (Welf. & Inst. Code, § 19150, subd. (a)), including "[m]aintenance, not exceeding the additional costs incurred while participating in rehabilitation" (*id.*, subd. (a)(8)). California regulations adopt examples of qualifying "maintenance" from the federal regulations, including "[t]he cost of short-term shelter that is required in order for an individual to participate in . . . vocational training at a site that is not within commuting distance of an individual's home." (Cal. Code Regs., tit. 9, § 7019, subd. (b)(2).) And California has a catchall provision for "[a]ny other goods and services necessary to render a person with disabilities employable." (Welf. & Inst. Code, § 19150, subd. (a)(16).)

California does not necessarily accept all eligible individuals into its vocational rehabilitation program. The Department, "[p]ursuant to federal law," establishes a priority order for providing services to eligible individuals. (Welf. & Inst. Code, § 19102.) Subject to this priority limitation and the availability of federal funds, an IPE "shall be developed for" each eligible individual. (*Id.*, § 19104, subd. (a).) The Department "shall provide the services defined and authorized by" these statutes to individuals who are found to be eligible. (*Id.*, § 19100.)

FACTS

Doe is a client of the Department and is eligible to receive vocational rehabilitation services. Doe and the Department entered into an

6

amended IPE, with his chosen employment outcome of becoming a lawyer.[2]

In May 2022, Doe informed his rehabilitation counselor of his acceptance to two law schools. One school was within commuting distance from his home (commuter school); the other was not (non-commuter school).

On June 15, Doe informed his rehabilitation counselor he was relocating to attend the non-commuter school. The Department agreed to cover tuition less any scholarships or grants, the security deposit for an apartment, initial setup charges for utilities, monthly internet costs, and travel costs for "one way to school at the start of the semester, and at the end of the semester, one roundtrip mileage." But the Department denied Doe's request for rent for the anticipated three years of school attendance. Citing California regulations, the rehabilitation counselor explained the Department could not pay "ongoing rent" because it was "not able to provide for basic ongoing living expenses."

About a week later, Doe signed a 13-month lease for an apartment near the non-commuter school. The monthly rent was $2,865. At that rate, three years of rent would cost $103,140.

Doe then notified the Department he wanted a "fair hearing" on his application for rental assistance. A regional director with the Department e-mailed Doe and confirmed the Department doesn't pay for housing.

The Department issues a guide called the Rehabilitation Administrative Manual. The guide defines maintenance as "monetary support for short-term or one-time costs, *in excess of the individual's normal expenses*, that are necessitated by participation in an assessment for eligibility, an assessment for [vocational rehabilitation] needs, or [vocational

_____

[2] A copy of the IPE is not included in the record.

7

rehabilitation] services under an IPE." Under the guide, "[m]aintenance payments are limited to actual expenses in excess of normal living expenses and are subject to financial participation [by the client or consumer] and comparable benefits [from another source of funds]." Maintenance includes short-term expenses, which in turn "include the cost of food and temporary lodging for consumers participating in training or other [vocational rehabilitation] services, when these services are outside of a reasonable commute distance from their homes." The Department "may also make one-time maintenance payments when appropriate," for costs such as security deposits or the initiation of utilities when consumers relocate for job training or placement.

At the administrative fair hearing, the parties agreed the main issue was "whether [the Department] is legally obligated to pay [Doe]'s rent for an apartment he will live in while attending law school."

Doe argued the Department had to pay his rent so he could complete his required training under the IPE, specifically law school. Doe offered two reasons for selecting the non-commuter school: (1) tuition is cheaper; and (2) the commuter school is not ABA-accredited and Doe wished to practice law outside California. Doe testified that before law school he had been living with his mother and didn't have to pay rent or utilities. In essence, Doe's position was that because he had no housing or utility expenses, his rent while in law school was a cost in excess of his normal living expenses. Doe stated he didn't have the financial ability to pay for rent and would have to drop out of school if the Department didn't pay it.

In its Statement of Position, the Department stated it "is only able to support short-term, one-time costs in excess of normal living expenses." The Department noted that Doe "made an informed choice to

attend a training program that is not within a commuting distance of his home and will be responsible for the long-term on-going cost of living expenses while participating in the training program. Federal and state regulations only allow for short-term shelter to be provided as maintenance." At the hearing, the Department's representatives confirmed the Department does not pay for student housing because it is a long-term or ongoing everyday living expense.

After taking the matter under submission, the ALJ denied Doe's claim. In her written decision, the ALJ analyzed California law and concluded "[t]he regulations regarding 'maintenance' do not permit [the Department] to pay [Doe's] rent for an apartment he resides in during law school." According to the ALJ, even if Doe had been living rent-free with his mother before attending law school, he was still incurring "normal living expenses," which happened to be paid by someone else. The ALJ concluded the cost to live in an apartment while attending law school was a "'normal,' 'basic,' or 'everyday'" living expense, even though Doe wouldn't have to pay for housing if he stayed at home. The ALJ added that "relocating to live in an apartment for three years while attending college is not a 'short-term' arrangement." The ALJ's decision was adopted by the Department as the final decision.

Doe filed a petition for writ of mandate in the superior court, challenging the Department's decision. At the hearing, Doe informed the court he had dropped out of law school. The court, after taking the matter under submission, denied the petition. The court reasoned, "Both the applicable Federal and California regulations provide for short-term shelter expenses, and three years of rent does not meet any reasonable definition of 'short-term shelter.' The [Department's] limitation of benefits to those that

9

are not long-term or ongoing is reasonable and is not so short as to deny an individual a necessary service." Doe timely appealed.

## DISCUSSION

The parties pose the issue on appeal—the proper interpretation of "maintenance" under the relevant law—as a binary question. Doe contends the issue is whether California "must pay for room and board expenses when an eligible individual is attending a training program outside of commuting distance from their residence and the expenses exceed what the individual normally pays." The Department argues it is prohibited from paying rent because it is a "normal long-term housing expense[ ]."

We characterize the issue somewhat differently from the parties: If an individual must move from his or her residence to a shelter closer to a site where he or she receives vocational rehabilitation services, is the cost of the shelter categorically excluded from the definition of "maintenance" under the Act or related California law?[3] As we shall explain, our answer is no.

### I.

#### STANDARD OF REVIEW

"'When reviewing the denial of a petition for writ of administrative mandate under Code of Civil Procedure section 1094.5, we ask whether the public agency committed a prejudicial abuse of discretion. "Abuse of discretion is established if the [public agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." [Citations.]'" (*Family Health Centers of San Diego v. State Dept. of Health Care Services*

---

[3] Although Doe employs the phrase "room and board," we consider the issue of "room" only. This is because the record does not show Doe asked the Department to pay for food as well.

(2021) 71 Cal.App.5th 88, 96 (*Family Health Centers*); Welf. & Inst. Code, § 19709, subd. (a) [authorizing petition for writ of mandate to challenge final decision concerning vocational rehabilitation services].)

"The interpretation of a regulation or a statute is, of course, a question of law. While an administrative agency's interpretation of the laws it is charged with enforcing may be entitled to deference, the court is the ultimate arbiter of the interpretation of the law." (*Family Health Centers*, *supra*, 71 Cal.App.5th at p. 97.)

II.

PRINCIPLES OF STATUTORY INTERPRETATION

"The general principles that guide interpretation of a statutory scheme are well settled. [Citation.] 'Our function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] To ascertain such intent, courts turn first to the words of the statute itself [citation], and seek to give the words employed by the Legislature their usual and ordinary meaning. [Citation.] When interpreting statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted. [Citation.] The language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute [citation], and where possible the language should be read so as to conform to the spirit of the enactment.'" (*Prang v. Los Angeles County Assessment Appeals Bd.* (2020) 58 Cal.App.5th 246, 253–254.)

III.

"MAINTENANCE" UNDER THE ACT AND RELATED CALIFORNIA LAW

We turn first to the words of the statutes themselves. Under the Act, vocational rehabilitation services include "maintenance for additional costs incurred . . . while receiving services under an [IPE]." (29 U.S.C.

11

§ 723(a).) Such services under California also include "[m]aintenance, not exceeding the additional costs incurred while participating in rehabilitation." (Welf. & Inst. Code, § 19150, subd. (a)(8).) To qualify as "maintenance" under the statutes, a cost must be (1) additional; and (2) incurred while participating in or receiving other vocational rehabilitation services. The common meaning of "additional" is "added, extra, or supplementary to what is already present or available." (Oxford American Dict. (3d ed. 2010) p. 1878.) Notably, the statutes do not address the duration of the cost—short- or long-term—except to require that it be tied to other qualifying services.

The federal and California regulations also define the term "maintenance" as "monetary support provided to an individual for expenses, such as food, shelter, and clothing, that are in excess of the normal expenses of the individual and that are necessitated by . . . the individual's receipt of vocational rehabilitation services under an [IPE]." (34 C.F.R. § 361.5(b)(34) (2022); see Cal. Code Regs., tit. 9, § 7019, subd. (a).) This definition comports with the federal and California statutes: To qualify as "maintenance," a cost must be (1) additional to normal expenses and (2) incurred while participating in or receiving other vocational rehabilitation services. The regulatory definition also explains that costs can be for food, shelter, or clothing. Here, again, nothing in the regulatory definition discriminates between short- and long-term costs.

The regulatory definitions do include "examples of expenses that would meet the definition of maintenance." (34 C.F.R. § 361.5(b)(34) (2022); see Cal. Code Regs., tit. 9, § 7019, subd. (b).) One such example is "[t]he cost of short-term shelter that is required in order for an individual to participate in vocational training at a site that is not within commuting distance of an

12

individual's home."[4] (34 C.F.R. § 361.5(b)(34) (2022).) However, the federal regulations expressly state the examples "are purely illustrative, do not address all possible circumstances, and are not intended to substitute for individual counselor judgement." (34 C.F.R. § 361.5(b)(34) (2022).) Thus, although this example concerns "short-term shelter," we cannot infer from it any intent to categorically exclude from the definition of "maintenance," long-term shelter required for an individual to participate in vocational training at a site that is not within commuting distance of an individual's home.

As argued by the Department, the California regulations add more to the discussion on "maintenance" than the federal regulations. California regulations further provide: "Nothing in this section [defining maintenance] shall be construed to mean that the Department will provide maintenance on a long-term or ongoing basis to support an individual's everyday living expenses or take the place of, provide the services of, or become a payment program similar to, welfare and other social service agencies." (Cal. Code Regs., tit. 9, § 7019, subd. (c).) "The Department may not provide maintenance to support an individual's basic living expenses." (Cal. Code Regs., tit. 9, § 7177, subd. (b).) However, "[s]hort-term emergency financial assistance may be provided under limited conditions[.]" (*Ibid.*)

A 2003 publication in the California Notice Register explains why the Department added this discussion. The Department amended the definition of "maintenance" and adopted the same examples to be "consistent"

---

[4] The other listed examples are: "[t]he cost of a uniform or other suitable clothing that is required for an individual's job placement or job seeking activities"; and "[t]he initial one-time costs, such as a security deposit or charges for the initiation of utilities, that are required in order for an individual to relocate for a job placement." (34 C.F.R. § 361.5(b)(34) (2022); Cal. Code Regs., tit. 9, § 7019, subd. (b)(1), (3).)

13

with federal regulations and the federal Rehabilitation Services Administration (RSA), which clarified that "maintenance expenses are not intended to meet ongoing or long-term needs." (Cal. Reg. Notice Register 2003, No. 44-Z, p. 1732.) It noted that "*RSA guidance states that the Department may not support the full costs of a homeless or deinstitutionalized individual's subsistence*" and "propose[d] to adopt provisions . . . to incorporate this RSA guidance for purposes of clarity." (Cal. Reg. Notice Register 2003, No. 44-Z, p. 1733, italics added.)

Given the Department's reliance on federal RSA guidance, we explore the rationale behind the guidance. In a 1995 Notice of Proposed Rulemaking, the Secretary of the Department of Education proposed regulations that would give examples of, among other things, "permissible expenses under the definition of 'maintenance.'" (60 Fed. Reg. 64477 (Dec. 15, 1995).) Some commenters worried the examples "would interfere with individual counselor judgment, whereas other commenters supported their use as an effective means of ensuring that counselors had ready access to information typically found in guidance materials. *By including the examples in the regulations, the Secretary intend[ed] to make the regulations more comprehensive and useful. The Secretary emphasize[d], both here and throughout the section-by-section summary, that the examples are provided solely for the purposes of illustration, do not address all situations that a rehabilitation counselor may face, and are not intended to preclude individual counselor judgment on a case-by-case basis.* The examples are merely guidance material to which rehabilitation professionals can quickly refer." (*Ibid.*, italics added.)

In the 1997 Notice of Final Regulations, the Secretary agreed with commentors that "maintenance may include costs other than standard

living expenses (i.e., food, shelter, and clothing) as long as the expenses are in excess of the normal expenses incurred by an eligible individual . . . ." (62 Fed. Reg. 6313 (Feb. 11, 1997).) In response to requests to delete "the fourth example in the note following the proposed definition, which stated that maintenance could be used to pay for food, shelter, and clothing for homeless or recently deinstitutionalized individuals until other financial assistance is secured," the Secretary agreed the fourth example "was inadvisable. Permitting [states] to support the full costs of a homeless or deinstitutionalized individual's subsistence under the maintenance authority, until other financial assistance becomes available, is inconsistent with the policy of limiting maintenance costs to those in excess of the individual's normal expenses. In addition, the Secretary agree[d] that welfare and other social service agencies are better equipped to support the everyday living expenses of the homeless or deinstitutionalized." (*Ibid.*) To that end, the Secretary deleted the term "living" from the proposed regulations to clarify that maintenance may include expenses other than living expenses and deleted the fourth example. (*Ibid.*)

The rationale for not supporting the full cost of subsistence for unhoused and deinstitutionalized persons does not extend to other eligible individuals, like Doe, who must leave their homes and potentially incur additional costs to receive vocational rehabilitation services elsewhere. We thus conclude the exclusion of "long-term or ongoing" living expenses (Cal. Code Regs., tit. 9, § 7019, subd. (c)) and "basic living expenses" (Cal. Code Regs., tit. 9, § 7177, subd. (b)) in the California regulations merely serve to expound on the primary definition of "maintenance"—that covered costs must be in excess of normal expenses. (34 C.F.R. § 361.5(b)(34) (2022).) As discussed, *ante*, federal and California regulations refer to the "normal

15

expenses of the individual." As such, they call for an assessment of each individual's circumstances. In cases where an eligible individual, currently sheltered, must incur additional shelter costs to receive other vocational rehabilitation services, it is possible the Department may need to cover those excess expenses.

Here, the Department's denial of rental assistance was based on a categorical distinction of short-term versus long-term shelter, without any consideration of Doe's individual circumstances. This was prejudicial error. A state agency "must develop and maintain written policies covering the nature and scope of each of the vocational rehabilitation services . . . and the criteria under which each service is provided." (34 C.F.R. § 361.50(a) (2022).) The policies must ensure services are provided "based on the rehabilitation needs of each individual as identified in that individual's [IPE]." (34 C.F.R. § 361.50(a) (2022).) And they "may not establish any arbitrary limits on the nature and scope of vocational rehabilitation services to be provided to the individual to achieve an employment outcome." (34 C.F.R. § 361.50(a) (2022).) For this reason, the judgment is reversed, and the matter is remanded so that the Department may reconsider Doe's request based on his personal circumstances.

We do not mean to suggest that on remand the Department must cover any or all of Doe's school rent upon reconsideration of his request. The record reflects the parties argued at the administrative hearing about an alternative law school within commuting distance of Doe's home. The record does not, however, contain a copy of the IPE, which would have likely shed light on the parties' agreement on "the specific vocational goods and services" Doe would receive and "the terms and conditions" under which they would be provided. (Welf. & Inst. Code, § 19104, subd. (b)(3); see also *id.*, § 19018

16

["Financial need shall be considered in the furnishing or denial of services"].) Our conclusion here simply responds to the Department's apparent policy of categorically refusing to cover as maintenance the cost of rent incurred by clients participating in a training program on the basis that it is "long-term" expense.

## DISPOSITION

The judgment is reversed. The matter is remanded with directions for the trial court to enter judgment granting Doe's petition for writ of mandate. The writ shall direct the Department to set aside the administrative decision and to reconsider Doe's request for rental assistance, consistent with this opinion. Appellant shall recover costs on appeal.


DELANEY, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

17