Kirk MARSHALL, Plaintiff,

v.

Richard M. SWITZER, Former Deputy Commissioner, Office of Vocational Rehabilitation of the New York Stated Educational Department, In His Individual Capacity, and Lawrence C. Gloeckler, Deputy Commissioner, Office of Vocational and Educational Services for Individuals with Disabilities of the New York State Education Department, in His Individual and Official Capacity, Defendants.

No. 92–CV–747 (FJS) (DNH).

United States District Court, N.D. New York.

Oct. 4, 1995.

Legal Aid Society of Mid–New York, Inc., Utica, New York (Paul J. Lupia, of counsel), for plaintiff.

Dennis C. Vacco, Attorney General of the State of New York, Albany, New York, for defendants.

*DECISION AND ORDER*

SCULLIN, District Judge:

## PROCEDURAL BACKGROUND

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that his rights under the Rehabilitation Act of 1973 were violated by defendants Switzer and Gloeckler. At the time of the alleged violation, defendant Switzer, who is being sued in his individual capacity, was serving as Deputy Commissioner of the New York State Office of Vocational Rehabilitation. Defendant Gloeckler, who is being sued in both his individual and official capacities, presently serves as defendant Switzer's successor in the position of Deputy Commissioner. Plaintiff seeks compensatory damages as well as declaratory and injunctive relief.

■ This matter is presently before the Court on remand from the Second Circuit Court of Appeals, where an initial Order dismissing the complaint on the grounds that plaintiff was not entitled to bring this claim under 42 U.S.C. § 1983 was vacated. The original dismissal was based on the Court's finding that Title I of the Rehabilitation Act does not create enforceable rights within the meaning of section 1983. The Second Circuit held that the Act does create such rights and, therefore, plaintiff is entitled to bring his claim under section 1983. *Marshall v. Switzer,* 10 F.3d 925 (2d Cir.1993).

The case was remanded for consideration of the remaining grounds for defendants' motion to dismiss. Those grounds consisted of defendants' assertions that plaintiff failed to state a claim for which relief may be granted, and that they are entitled to qualified immunity as a matter of law. By Order dated January 3, 1995, the Court converted the motion into a summary judgment motion on the same grounds.[1] Thereafter, the parties submitted additional affidavits addressing the issue of qualified immunity as well as the failure to state a claim defense. The Court, having duly considered all of the parties'

submissions, will address each ground for summary judgment.

## FACTS

The Rehabilitation Act of 1973 provides a framework within which states devise and implement federally funded and regulated plans to provide handicapped individuals with vocational services in order to enable them to obtain gainful employment to the extent of their capabilities. Substantial amounts of federal funds are made available to states for the providing of such rehabilitation services.

The primary goal of the Rehabilitation Act is to enable states to provide rehabilitation services tailored to each individual client's needs. Pursuant to 29 U.S.C. § 721, in order to receive federal funding under the Act, a state must submit an appropriate rehabilitation services plan to the Commissioner of the Federal Rehabilitation Services Administration. These state plans must include administrative procedures and regulations which govern the provision of services under the Rehabilitation Act. In New York State, the Office of Vocational and Educational Services for Individuals with Disabilities ("VESID") is responsible for developing and implementing a state plan.

Both Title 29 of the U.S.Code and the corresponding state laws and regulations require that VESID prepare an individualized written rehabilitation program ("IWRP") for each of its clients.[2] An IWRP is intended to identify the vocational goal of the client along with the specific services which must be provided in order for him or her to achieve that goal.

The VESID regulation which is at issue in the case at bar is regulation number 1350.00, which is entitled "Vehicle Modifications and Adaptive Equipment." This regulation deals with client applications for the reimbursement of costs associated with vehicle modifications. In addition to setting forth the procedures that must be followed in requesting such reimbursements, this section also establishes limitations on the amount a client may

---

1. This Order was supplemented by an Order dated September 12, 1995, which served to clarify the Rule 12(b) conversion.

2. In New York, handicapped persons who apply for services and are found to be eligible are considered to be "clients" of VESID.

be reimbursed for vehicle modifications.[3] The regulation states that VESID will not reimburse a client for the cost of basic automobile "equipment available from [a] dealer through factory installation." Marshall Ans. Aff.Ex. 12, Policy 1350.00, Sec. I.

Plaintiff became a client of VESID in 1984, at which time an initial IWRP was established for him. In his initial IWRP, plaintiff's occupational goal was listed as "business management and/or human services." Soon thereafter, in February 1985, a rehabilitation counselor evaluated plaintiff and concluded that his vehicle would require many modifications in order to enable him to drive independently. These modifications included both factory and non-factory installed options.[4] Following this evaluation, in August 1986, plaintiff purchased a 1987 Ford van which contained all of the factory-installed modifications that had been prescribed by the rehabilitation counselor in 1985.

In August of 1987, VESID issued an amended IWRP for plaintiff which addressed his need for the prescribed van modifications. This IWRP stated that VESID would reimburse plaintiff for all "essential, justified, and recommended" modifications other than "standard or optional equipment available from the dealer by factory installation...." Marshall Ans.Aff.Ex. 4. VESID's decision not to reimburse plaintiff for the factory-installed options was based on the provisions contained in regulation number 1350.00.[5]

Plaintiff appealed this decision, and two levels of administrative review ensued, with the validity of regulation 1350.00 being upheld at both levels. *Id.* ¶ 15. Thereafter, an administrative hearing was held at which time the hearing officer found VESID's decision to not reimburse Marshal for factory-installed modifications "arbitrary and discriminatory," and recommended that VESID reconsider its policy of not reimbursing clients for such modifications. *Id.* Ex. 5.

The hearing officer's findings and recommendation were subsequently denied by defendant Switzer in his capacity as Deputy Commissioner of the Office of Vocational Rehabilitation.[6] In denying the recommendation, Switzer stated that section 1350.00 was "appropriate as stated and applie[d] to [Marshall's] case." Marshall Ans.Aff.Ex. 6. As a result of this decision, the denial of plaintiff's request for reimbursement for the factory-installed modifications was upheld, and plaintiff's VESID case was closed as "successfully rehabilitated." *Id.*

Following Switzer's final determination, plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging that VESID's refusal to fully reimburse him for the costs of the factory-installed modifications constituted a deprivation of his rights under the Rehabilitation Act. Plaintiff seeks declaratory and injunctive relief as well as compensatory damages.

## DISCUSSION

■ In the case at bar, plaintiff seeks a judicial interpretation of the scope of services that the Rehabilitation Act requires state agencies to provide. Because this task "falls squarely within the traditional realm of judicial competence," *Marshall,* 10 F.3d at 930, the entire action is ripe for disposition at the summary judgment stage. As stated above, both defendant Switzer, in his individual ca-

---

3. These monetary limitations are set at (1) $4,000 for modifications made to any car, or to a van which the client will only use as a passenger; and (2) $10,500 for modifications to a van in which the client will function as driver. Marshall Ans.Aff.Ex. 12, Policy 1350.00, Sec. IV(3). These limitations, however, may be waived by VESID upon a client's showing of specialized need. Pawson Supp.Aff. ¶ 12.

4. The factory-installed options in question consisted of such things as an automatic transmission, power steering, air conditioning, power brakes, rear heater, swing-out sliding door, and tinted windows. Complaint ¶ 37.

5. The modifications to plaintiff's van cost approximately $17,500. Approximately $3,000 of this amount was attributable to the factory-installed modifications while the remaining $14,500 was attributable to the non-factory installed modifications. Marshall Ans.Aff. ¶ 9 & Ex. 4. In the amended IWRP, VESID agreed to reimburse plaintiff for the $14,500 attributable to non-factory installed modifications, thereby waiving the $10,500 cap stated in policy 1350.00. Ans. Aff.Ex. 4.

6. The Office of Vocational Rehabilitation ("OVR") was the predecessor of VESID.

pacity, and defendant Gloeckler, in his individual and official capacities, have moved for summary judgment on two separate grounds.[7] First, they assert that plaintiff has failed to state a claim upon which relief may be granted. Because this motion is being decided in the summary judgment context, the Court will treat this as a claim that plaintiff failed to establish a prima facie case. And, secondly, defendants assert that they are entitled to qualified immunity to the extent that they are being sued in their individual capacities. The Court will address each of these grounds individually.

### Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence in the light most favorable to the non-movant, the court determines that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). The burden of showing that no genuine issue of material fact exists rests on the moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). Where the moving party does not bear the ultimate burden of proof at trial, the summary judgment burden may be satisfied by pointing out the absence of evidence to support the non-movant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant shows the absence of such evidence, the burden of persuasion shifts to the non-movant to show that the record contains sufficient evidence to establish each element of its case. *Id.*, at 322, 106 S.Ct. at 2552.

Because a motion for summary judgment requires the court to search the entire record, *American Camping Ass'n. Inc. v. Whalen*, 554 F.Supp. 396, 399 (S.D.N.Y.1983),

"summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56." 10 A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2720, pp. 29–30 (2d ed. 1983); *see also Project Release v. Prevost*, 722 F.2d 960, 969 (2d Cir.1983).

The ability to grant summary judgment, *sua sponte*, allows a court to remain true to the goal of Rule 56 by expediting the disposition of cases. 10 A C. Wright et al., Federal Practice and Procedure, § 2720, at 33. Therefore, the Second Circuit has stated that where "the evidence of the facts bearing on the issues arising out of the complaint is all before the court in affidavit form, it is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had [the non-movant] made a cross-motion for summary judgment." *Local 33, Int'l Hod Carriers Bldg. & Common Laborers' Union of America v. Mason Tenders Dist. Council of Greater New York*, 291 F.2d 496, 505 (2d Cir.1961).

Both parties have submitted numerous affidavits supporting their respective positions on these motions. After examining these affidavits, the Court finds that there are no questions of material fact which would preclude it from disposing of this action at the summary judgment stage. Accordingly, the Court makes the following determinations.

### Failure to Establish a Prima Facie Case

In order to properly allege a claim under 42 U.S.C. § 1983, a party must satisfy two essential elements. A party must allege that the conduct complained of was committed by a person acting under color of state law, and that that conduct deprived the party of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24 (2d Cir.1988). Additionally, allegations of personal involvement by any defendant "is a prerequisite to an award of damages (against that defendant) under [section] 1983."

---

7. As stated above, defendants' originally moved to dismiss the complaint on several grounds. Following remand, the Court notified the parties of its intent to convert the motion to one for summary judgment pursuant to FRCP 12(b)(6), and both parties have submitted additional materials and affidavits.

*McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

### Defendant Gloeckler

 In support of his motion for summary judgment, defendant Gloeckler argues that plaintiff has failed to state a claim for relief against him, in his individual capacity, because he was not personally involved in the alleged denial of services. The Second Circuit has recognized various ways in which a defendant can be personally involved in a deprivation of rights within the meaning of section 1983. One of the ways that personal involvement can exist is where "[a] supervisory official, after learning of the [statutory] violation through a report or appeal, ... fail[s] to remedy the wrong." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). In the case at bar, plaintiff claims that defendant Gloeckler was personally involved in the wrongful denial of services because he ultimately learned of plaintiff's claim that policy 1350.00 was illegal and he failed to remedy it. Pl.Sec.Opp.Mem. at 10.

While plaintiff makes this contention in his memorandum, his complaint fails to allege any specific acts of personal involvement by Gloeckler. In fact, the only allegation that even mentions defendant Gloeckler summarily states that "[d]efendant Switzer's determination (not to reimburse plaintiff for the van modifications) became a final determination of the OVR and successor agency VESID and, as such, has been relied upon by Defendant Gloeckler." Complaint ¶ 49. There is no explanation, either in the complaint or in plaintiff's memorandum, of what, if anything, Gloeckler did to fail to "remedy the wrong" done to plaintiff.

Plaintiff argues in his memorandum that Gloeckler has had sufficient personal involvement in this matter because he admitted that he has been aware of plaintiff's claim of the illegality of policy 1350.00 since June 1992, and he has allowed it to continue to be applied since that time. Pl.Sec.Opp.Mem. at 10. He bases this argument on Gloeckler's statement that he took "no action with respect to the claims raised in plaintiff's complaint and, until informed of the services of process [in this case], [he] was unaware of the fact that plaintiff contends that VESID's vehicle modification policy is illegal...." Gloeckler Aff. ¶ 3. This statement hardly supports plaintiff's argument that Gloeckler was aware of a wrong towards plaintiff and allowed it to continue.

The record clearly indicates, and plaintiff openly concedes, that Gloeckler did not become aware of plaintiff's contentions that regulation 1350.00 was illegal until *after* he had been served with process. Thus, Gloeckler's failure to remedy the alleged illegality of regulation 1350.00 occurred, if at all, after this action had already been filed. Accordingly, the Court finds that plaintiff has failed to show that defendant Gloeckler was personally involved in the alleged wrongful conduct, and, therefore, he is entitled to summary judgment as to the claims against him in his individual capacity.

### Defendant Switzer

 In support of his defense that plaintiff has failed to establish a prima facie case against him in his individual capacity, defendant Switzer asserts that the present action is barred from going forward because it is comprised of claims which plaintiff failed to raise in the administrative process below. The Court, however, finds that plaintiff, at both the administrative stage and in filing this lawsuit, has consistently claimed that VESID's policy 1350.00 violated the Rehabilitation Act. Even if the Court were to find otherwise, "[i]t is well-established that § 1983 generally allows plaintiffs with federal or constitutional claims the right to sue in federal court without first resorting to state judicial remedies, or state administrative remedies." *Kraebel v. Dept. of Housing Pres. & Dev.,* 959 F.2d 395, 404 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 326, 121 L.Ed.2d 245 (1992). Accordingly, defendant Switzer is not entitled to summary judgment on this ground.[8]

---

8. The Court also finds no merit in defendant Switzer's argument that summary judgment is warranted due to the fact that plaintiff based his claims upon statutes which were enacted after the 1989 decision by him. It is clear that plaintiff's action is premised primarily upon 29 U.S.C.

**Defendant Switzer's Motion for Summary Judgment on the Separate Ground that he is Entitled to Qualified Immunity**

Qualified immunity protects state officials from liability for damages where their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would know." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Smith v. Coughlin,* 938 F.2d 19 (2d Cir.1991). Simply stated, qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 340, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Accordingly, in order to establish the defense of qualified immunity, an official "must satisfy one of two tests: either that his conduct did not violate 'clearly established' rights of which a reasonable person would have known, or that it was 'objectively reasonable' to believe that his acts did not violate these clearly established rights." *Finnegan v. Fountain,* 915 F.2d 817 (2d Cir.1990).

It is well settled that a right may be deemed "clearly established," if it is "sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In other words, an action need not be previously held unlawful in order for it to be beyond the reach of qualified immunity. Rather, "in light of pre-existing law the unlawfulness [of the action] must be apparent." *Id.*

The Second Circuit has delineated three factors that a court may look to in determining whether a particular right was clearly established at the time the defendants acted. These factors include:

(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question;

and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

In determining qualified immunity, therefore, the initial inquiry must focus on the right that is deemed to have been violated by the defendants. In the case at bar, this inquiry is made more difficult by the fact that the parties do not agree as to what particular right may have been violated. Plaintiff asserts that the Rehabilitation Act requires the state to provide him with all necessary rehabilitation services, and that such services cannot be denied without taking into account the individual needs of the clients. Accordingly, plaintiff asserts that regulation 1350.00 is illegal because it is a blanket prohibition that denies him his right to receive necessary services. Plaintiff's Supp.Mem. at 17. However, defendants maintain that there is no clearly established legal right which requires "[s]tates to provide individuals with disabilities with compensation for factory-available options in vehicles they purchase." Def.Supp.Mem. at 14–15.

"The practical application of [the 'clearly established'] standard depends substantially upon the level of generality at which the relevant legal [right] is to be identified." *Alvarado v. Picur,* 859 F.2d 448, 452 (7th Cir.1988). Therefore, the more generalized the right, the more likely that it will be deemed to have been "clearly established." For purposes of this analysis, the Court will assume that the right as proposed by plaintiff, being the more generalized, is the right at issue in this case.[9]

## I. Was the "Right" Defined with "Reasonable Specificity?" [10]

The Rehabilitation Act mandates that state plans "shall provide, at a minimum,

§ 723 which was enacted as part of the original Rehabilitation Act in 1973.

9. Obviously, if the Court finds that plaintiff's generalized right was not "clearly established," it

must also find that defendants' more narrowly drawn right was not "clearly established."

10. In performing a qualified immunity analysis, the Court must examine the statute in question as it existed at the time of the allegedly unlawful

for the provision of ... vocational rehabilitation services." 29 U.S.C. § 721(a)(8). Vocational rehabilitation services are subsequently defined as "any goods or services necessary to render a handicapped individual employable." *Id.* § 723(a). The Act requires states to provide all of the goods and services specifically described in section 723 of the Act, unless the client can receive similar benefits under any other program.[11] One of the services which states are required to provide, unless the client can receive similar benefits under another program, is "transportation in connection with the rendering of any vocational rehabilitation service." *Id.* § 723(a)(10). Additionally, in 1986, the Act was amended to include "Rehabilitation Engineering Services" as an additional benefit available to eligible clients. These services were defined as

> the systematic application of technologies, engineering methodologies, or scientific principles to meet the needs of and address the barriers confronted by individuals with handicaps in areas which include education, rehabilitation, employment, transportation, independent living, and recreation.

29 U.S.C. § 706(12) (West Supp.1990). The Act, however, does not provide any guidance as to what precise benefits are appropriate under either of these services.

In order to evaluate the full scope of the Rehabilitation Act, the Court must read it in conjunction with the regulations that were enacted to assist in its implementation by the states. *See Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute"). In this case, the pertinent regulations provide that a state vocational rehabilitation plan must establish a policy which sets forth "the conditions, criteria, and procedures under

which each service is provided." 34 CFR § 361.42(b) (1995). They also direct that every IWRP include "[t]he terms and conditions for the provision of vocational rehabilitation services, including ... the extent of client participation in the cost of services...." 34 C.F.R. § 361.41(a)(9).

The regulations, therefore, seem to permit the provision of services to be conditional, while the language of the Act seems to mandate that the provision of some services be unconditional. Thus, it is unclear to what extent, if any, the Rehabilitation Act permits a state agency to have discretion over the disbursement of "necessary" rehabilitation services. Accordingly, the Court cannot find that the right in question as articulated by plaintiff was defined with "reasonable specificity."

## II. Relevant Decisional Law

Neither party has been able to produce any relevant decisional law of the Supreme Court or the Second Circuit which would be helpful in ascertaining whether the right in question, as plaintiff perceives it, was clearly established in 1989. Plaintiff has produced two cases which he asserts are sufficient to show that the right to be protected from any state instituted "blanket prohibitions" on rehabilitation services was clearly established at that time.

In *Schornstein v. NJ Div. of Vocational Rehabilitation Services,* 519 F.Supp. 773 (D.N.J.1981), *aff'd* 688 F.2d 824 (3d Cir.1982), the district court held that a blanket policy which denied interpreter service to every deaf college student was in contravention of the Act's requirement of providing individualized programs. Similarly, in *Scott v. Parham,* 422 F.Supp. 111 (D.Ga.1976), the district court held that a state guideline which provided financial support only to those individuals receiving vocational rehabilitation who lived independently was unreasonable

---

conduct. Accordingly, this portion of the Court's discussion is based on the relevant sections of the Rehabilitation Act as they existed in 1989.

**11.** The Act provides that states are unconditionally obligated to supply: (1) an evaluation of rehabilitation potential; (2) counseling, guidance, and placement services; (3) vocational and

training services; and (4) rehabilitation engineering services. States are only obligated to provide the other listed goods and services after it determines that the client cannot receive similar benefits under any other program. 29 U.S.C. § 721(a)(8).

due to its failure to address the particular needs of each individual.

These two cases illustrate the fact that the Rehabilitation Act established a right to the provision of individualized services. They do not, however, result in this Court finding that in the Second Circuit in 1987 there existed a right not to have any rehabilitation services denied by blanket prohibitions. As the Second Circuit discussed in *Jermosen,* a right can be deemed "clearly established" if the caselaw of *"the Supreme Court and the applicable circuit court* support the existence of the right in question." *Jermosen,* 945 F.2d at 550 (emphasis supplied). Because both of the above cited cases are from district courts, neither of which are within the Second Circuit, they could not, standing alone, create a clearly established right in this Circuit. *See Hawkins v. Steingut,* 829 F.2d 317, 321 (2d Cir.1987) ("a district court decision does not 'clearly establish' the law even of its own circuit, much less that of other circuits").

As additional support for his argument that the right in question was clearly established in 1989, plaintiff places great reliance upon the decision that was issued at the conclusion of his administrative hearing. While it is clear that that decision contained a recommendation from the hearing officer that VESID "reconsider its policy of not paying for factory installed options," such a recommendation is hardly enough to "clearly establish" a right to be provided with such options. Marshall Aff.Ex. 5, p. 5. Because "a district court decision does not 'clearly establish' the law even of its own circuit," *Hawkins,* 829 F.2d at 321, a recommendation from an administrative hearing officer surely cannot do so. Thus, there is no relevant decisional law which would support the existence of the right in question.

### III. Whether A Reasonable Defendant Official Would Have Understood That His Acts Were Unlawful

In further support of his argument that the right in question was clearly established, the plaintiff relies on two policy directives that were issued by the federal Rehabilitation Services Administration. Plaintiff relies on these memoranda in an attempt to show that, in 1989, a reasonable official would have understood that it was unlawful to apply the blanket prohibition included in regulation 1350.00 to plaintiff's case. The first memo, issued in December 1985, discusses the propriety of establishing annual limits on the amount of money spent on each client or for each service category. Marshall Aff.Ex. 9. The memo states that "[o]verall annual dollar limits per individual [or per service category] are not allowable as a blanket rule." *Id.* Similarly, the second memo, issued in November 1987, states that "[s]ervice decisions should not be subject to arbitrary, categorical limitations on expenditures...." *Id.* Ex. 8.

It is clear from these policy directives that categorical limitations on the amount of money that may be spent on a client or a service are not permitted under the Act. In the case at bar, however, plaintiff was not denied any services as a result of a categorical limitation on expenditures. In fact, as stated above, the record clearly shows that plaintiff was granted a waiver by VESID so that his reimbursements could exceed the monetary limitations set forth in section 1350.00. Therefore, these directives did not serve to clearly establish plaintiff's right not to have his request for reimbursement denied through the application of a non-expenditure related blanket rule.

After analyzing the Act itself, and the entire record in this matter, the Court finds that, in 1989, a reasonable defendant would not have known that it violated the Rehabilitation Act to categorically deny a request for the provision of factory-installed modifications. Absent a violation of a "clearly established" right, an official is entitled to summary judgment based upon qualified immunity. *See, e.g., Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). Because the Court finds that the actions of defendant Switzer did not violate any clearly established rights, he is entitled to the protection of qualified immunity, and summary judgment is appropriate on the claim asserted against him.[12]

12. In light of the Court's finding that plaintiff did not have a "clearly established" right to reim-

## Remaining Claims

Although the Court, has determined that neither defendant may be held personally liable to plaintiff for compensatory damages, his claims for prospective relief still remain viable. As a result, defendant Gloeckler, in his official capacity as Deputy Commissioner of VESID, is the only remaining defendant in this action, and plaintiff's only remaining claims are those seeking declaratory and injunctive relief.

■■■■■ It is well settled that a suit seeking damages against a state official in his official capacity constitutes an action against the state for Eleventh Amendment purposes. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). The Eleventh Amendment bars suits against state officials seeking retroactive monetary relief, but not those where the relief sought is prospective in nature. *See Association of Surrogates v. State of N.Y.*, 940 F.2d 766, 774 (2d Cir.1991). Actions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action. *Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir.1988), *cert. denied* 495 U.S. 957, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990); *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10, 109· S.Ct. 2304, 2312 n. 10, 105 L.Ed.2d 45 (1989); *Dube v. SUNY*, 900 F.2d 587, 595 (2d Cir.1990), *cert. denied*, 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991). Here, the Deputy Commissioner of VESID was the official responsible for the allegedly wrongful denial of benefits. Thus, notwithstanding his lack of personal involvement in the alleged wrongful conduct, plaintiff's claims for declaratory and injunctive relief against defendant Gloeckler, in his capacity as Deputy Commissioner of VESID, are not barred. *Luckey*, 860 F.2d at 1015–16 ("Personal action is not a necessary condition of injunctive relief against state officers in their official capacity").

bursement for the factory-installed modifications, it need not address whether Switzer's actions

## Injunctive Relief

■■■■■ As stated above, plaintiff seeks a permanent injunction prohibiting defendant Gloeckler and his successors from applying policy 1350.00 to him in the future. Plaintiff has the burden of establishing the necessity of such relief, which "can be issued only to prevent existing or presently threatened injuries." *Socialist Workers Party v. Attorney Gen. of U.S.*, 642 F.Supp. 1357, 1425 (2d Cir.1986). Plaintiff is required to make "a showing of irreparable harm, 'a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" *Levin v. Harleston*, 966 F.2d 85, 90 (2d Cir.1992) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983)).

■■■■■ In the case at bar, plaintiff argues that because he is still a client of VESID, his IWRP is periodically amended and, therefore, he continues to suffer from the application of regulation 1350.00. Even if the Court were to assume that the application of policy 1350.00 constitutes a redressable "wrong," the injury that plaintiff is complaining of is a past injury, not a continuing one. VESID's refusal to provide plaintiff with factory-installed modifications to his van occurred in 1989. The fact that that denial has not been altered despite subsequent amendments to his IWRP does not mean that it has been repeated with each amendment.

■■■■■ "Past injury may have a bearing upon whether an injunction should be granted, but only as to the likelihood that the past misconduct will be repeated." *Socialist Workers*, 642 F.Supp. at 1425. Here, the only way that plaintiff could again be denied reimbursements for factory-installed modifications by VESID is if he were to purchase another van. Because plaintiff has given no indication that he will need to purchase a new van in the near future, it cannot be said that there is "any real or immediate threat that [he] will be wronged again." *Lyons*, 461 U.S. at 111, 103 S.Ct. at 1670. While the

were "objectively reasonable."

Court recognizes that it is likely that plaintiff will have to purchase a new van at some time in the future, that is an event far too remote in time to compel injunctive relief in the present case. *See Carey v. Klutznick,* 637 F.2d 834, 837 (2d Cir.1980) (per curiam) ("Real and imminent, not remote, irreparable harm is what must be demonstrated."). Accordingly, the Court finds that plaintiff is not entitled to injunctive relief because he has not shown that he is suffering from any existing injury or that there is "any real or immediate threat" that he will again be denied reimbursement for factory-installed modifications to his van.[13]

## Declaratory Relief

▮ Plaintiff also seeks a declaratory judgment against defendant Gloeckler stating that VESID's policy 1350.00 violates the terms of the Rehabilitation Act. In order to establish standing for such relief, however, plaintiff must show that (1) policy 1350.00 is "fixed and definite," or (2) that VESID's allegedly unlawful actions were occurring at the time the complaint was filed or were imminent. *See Socialist Workers Party v. Atty. Gen. of U.S.,* 642 F.Supp. 1357, 1425 (S.D.N.Y.1986) ("there can be no declaratory relief against governmental policy or action unless that policy is fixed and definite or unless the action is taking place or is imminent"). The Court finds that plaintiff has satisfied this requirement, as the record clearly shows that policy 1350.00 is "fixed and definite," and is regularly applied by VESID.

▮ In assessing whether declaratory relief is appropriate in the case at bar, the Court must determine whether the portion of VESID policy 1350.00 that requires clients "to assume costs of the basic vehicle and equipment available from the dealer through factory installation," violates the provisions of the Rehabilitation Act. In effect, the Court must decide "whether factory-installed options are goods which [the Act] requires participating states to provide if necessary to render clients employable." *Marshall,* 10 F.3d at 929. The Court need not, however, require a showing of irreparable harm, because "declaratory relief does not share injunctive relief's requirement of irreparable harm." *Levin,* 966 F.2d at 90.

As stated above, section 103(a) of the Act defines the scope of vocational rehabilitation services provided under Title I as "any goods or services necessary to render an individual with a disability employable...." 29 U.S.C. § 723(a). This section provides a non-exclusive list of such goods and services. Presently, this list includes sixteen specific types of goods or services which are obtainable under the Act. "[T]ransportation in connection with the rendering of any vocational rehabilitation service" continues to be on the list, while "rehabilitation engineering services," was replaced by "rehabilitation technology services," in 1992.[14] *Id.* at (a)(10).

"The term ['rehabilitation technology services'] includes rehabilitation engineering, assistive technology devices, and assistive technology services," in addition to the above stated definition of "rehabilitation engineering services."[15] 29 U.S.C. 706(13) (West.

---

13. Plaintiff also seeks an injunction compelling defendant Gloeckler or his successors to amend his IWRP without reference to policy 1350.00. Presumably, plaintiff believes that such an injunction would result in a recovery of the expenses associated with the factory-installed modifications. It is well-settled, however, that the Eleventh Amendment bars any type of judgment which requires a state to pay retroactive damages. *See Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974) (order requiring retroactive payment of wrongfully denied benefits barred by Eleventh Amendment). Accordingly, even if the Court were to find that a proper showing of irreparable harm has been made, such injunctive relief would be barred.

14. Because this amendment occurred after Switzer's determination, it provided no assistance to the Court in its qualified immunity analysis. The Court is not, however, barred from referring to this amendment in analyzing whether prospective relief is appropriate. Such an analysis requires the Court to determine whether policy 1350.00 violates the Act as it exists presently, not as it existed in 1989 when Switzer's determination was made.

15. The 1992 amendment to the Act also stipulated that "rehabilitation technology services" is one of the services that state agencies must provide to clients regardless of whether comparable services are obtainable through another program. 29 U.S.C. §§ 721(8) & 723(a)(12).

Supp.1993). The Act defines "assistive technology devices" as "any item, piece of equipment, or produce system, whether acquired commercially off the shelf, modified or customized, that is used to increase, maintain or improve functional capabilities of individuals with disabilities." 29 U.S.C. §§ 706(23) and 2202(1) (West Supp.1994). The Court finds that factory-installed modifications to a van, which are necessary to enable a handicapped individual to drive, would fit into this category of "assistive technology devices."

The full scope of the services required under the Act was also clarified in two separate policy directives which were issued to all state vocational rehabilitation agencies, including VESID, by the Rehabilitation Services Administration ("RSA") in November of 1990. In the first directive, the RSA stated that "[r]ehabilitation technology encompasses a range of services and devices which can supplement and enhance *individual functions.*" Def.Supp.Mem.Ex. RSA–PD–91–03 (November 16, 1990) (emphasis supplied). Clearly, driving must be considered an "individual function," and factory-installed modifications do more than supplement or enhance that function for handicapped individuals, in most cases they make it possible.

Similarly, in a November 1990 "Technical Assistance Circular," the RSA elaborated on its earlier discussion of rehabilitation technology by stating that it was "available either to substitute for functions lost through disability, or to supplement or enhance existing functions in order to expand employment and independent living opportunities." Def. Supp.Mem.Ex. RSA–TAC–91–01, p. 2 (November 16, 1990). Again, it is clear to the Court that driving must be considered an individual function that would serve to "expand employment and independent living opportunities."

In light of the 1992 amendment, and the referenced policy directives, the Court finds that factory-installed modifications are goods which the Act now requires states to provide if necessary to enhance employment or independent living opportunities. Therefore, the Court finds that VESID policy 1350.00 violates the Rehabilitation Act to the extent that it precludes clients from being reimbursed for the costs associated with the purchase and installation of necessary, factory-installed vehicle modifications.

## CONCLUSION

For the above stated reasons, defendant Switzer's motion for summary judgment based upon qualified immunity is granted, and the claims against him are dismissed in their entirety. Defendant Gloeckler's summary judgment motion for failure to establish a prima facie case is granted, and the claims against him in his individual capacity are dismissed. As for the claims against defendant Gloeckler in his official capacity, summary judgment is granted as to plaintiff's claims for injunctive relief and denied as to his claim for declaratory relief. And, finally, summary judgment is granted, *sua sponte,* to plaintiff on his claim for declaratory relief.

Accordingly, it is hereby

ORDERED, that defendant Switzer's motion for summary judgment is GRANTED, and all claims against him are dismissed; and it is further

ORDERED, that defendant Gloeckler's motion for summary judgment with respect to the claims against him in his individual capacity is GRANTED; and it is further;

ORDERED, that defendant Gloeckler's motion for summary judgment on plaintiff's claim for injunctive relief is GRANTED; and it is further

ORDERED, that summary judgment is GRANTED, *sua sponte,* to plaintiff on his claim for declaratory relief.

**IT IS SO ORDERED.**