**Sharon PEDDLE, Plaintiff,**

v.

**Kathleen Hawk SAWYER, Director, Federal Bureau of Prisons, individually and in her official capacity, et als., Defendants.**

**No. 398CV2364(WWE).**

United States District Court,
D. Connecticut.

July 22, 1999.

David N. Rosen, Rosen & Dolan, P.C., New Haven, CT, Michael D. Pinard, Brett Dignam, Jerome N. Frank Legal Services, New Haven, CT, for plaintiff.

William A. Collier, U.S. Attorney's Office, Hartford, CT, for defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS

EGINTON, Senior District Judge.

Plaintiff, Sharon Peddle, an inmate at the Federal Correctional Institution ("FCI") in Danbury, Connecticut, alleges that present and former prison officials violated her rights pursuant to the Fourth, Fifth and Eighth Amendments and the Violence Against Women Act ("VAWA").

Defendants seek dismissal of the entire complaint. Ms. Peddle has filed an opposition to defendants' motion to dismiss.

### BACKGROUND

Plaintiff's complaint recites the following factual circumstances. From March, 1995 to May, 1996, Ms. Peddle was an inmate at FCI, who had a history of being physical abused and was at risk of being subordinated to men whom she viewed as authority figures.

Defendant Kathleen Hawk Sawyer is and was then the Director of the Federal Bureau of Prisons; Brian Ross and Harrell Watts were employed by the Office of Internal Affairs; Charles Stewart was the warden of FCI; Michael Caltabiano, Janice Killian, Joseph Scibana and Karen Hogsten were associate wardens of FCI; Donald Reich was the Chief Correctional Officer at FCI; Malcolm Brown was a lieutenant at FCI; Michael Nathanson and Samantha Mannion were Special Investi-

gative Services officers at FCI; and Frank Straub and Joseph Lestrange were employed by the Office of the Inspector General at the Department of Justice.

Since 1994, FCI Special Investigative Services, the Office of Internal Affairs, and the Office of the Inspector General have investigated numerous instances of sexual abuse of prisoners by prison employees at FCI. Correctional Officer Opher Cephas, who was an employee of FCI, was the subject of some of these investigations for his sexual misconduct.

In April, 1995, Officer Cephas was posted in Unit 8, where Ms. Peddle was housed, and was assigned to work as an orderly. At that time, all defendants except Lieutenant Brown allegedly knew about the investigations into Officer Cephas's sexual misconduct and should have been aware of the risk posed by assigning him to posts where he had contact with female inmates.

As a correctional officer, Officer Cephas was able to obtain information about Ms. Peddle and her family. In particular, he learned that she hoped to remain at FCI, the institution closest to her children.

From April through September, 1995, Officer Cephas engaged in a course of conduct in which he would regularly grope Ms. Peddle in the breast and groin areas, and threaten her in order to compel her to engage in oral and vaginal sex. Specifically, Officer Cephas threatened that he would contact Ms. Peddle's teenage daughter or have Ms. Peddle transferred to another facility further away from her children if she informed anyone about his conduct or refused to have sexual contact with him. FCI Danbury employees and inmates observed the inordinate amount of contact that Officer Cephas had with Ms. Peddle.

From October through December, 1995, Officer Cephas was assigned to an outside patrol. In that position, Officer Cephas repeatedly singled out Ms. Peddle for pat searches, during which he groped her breasts and groin. During this period, Officer Cephas controlled Ms. Peddle's contact with other people and her conduct. On several occasions, he prevented her from eating dinner by requiring her to wait for him in the recreation yard during the entire dinner hour while he was on outside patrol.

From January through March, 1996, Officer Cephas was assigned the midnight to 8:00 a.m. shifts in units other than Unit 8. Nevertheless, Officer Cephas was able to let himself into Unit 8 in the early morning hours where he would threaten Ms. Peddle, and demand oral and vaginal sex of her. Several inmates witnessed the sexual contact between Officer Cephas and Ms. Peddle.

On February 4, 1996, Ms. Peddle was placed in Administrative Detention, where defendant Officers Nathanson and Mannion interrogated her about her contact with Officer Cephas. She was released from Administrative Detention on February 16, 1996.

On February 18, 1996, Officer Cephas questioned Ms. Peddle about the investigation and warned her not to reveal any information or he would retaliate against her. Defendant Lieutenant Brown observed Officer Cephas and Ms. Peddle in close conversation and warned Ms. Peddle not to get Officer Cephas in trouble.

Later that day, Ms. Peddle was sent again to Administrative Detention, where defendants Nathanson and Mannion questioned her about Officer Cephas. On March 7, 1996, she was released from Administrative Detention into Unit 10.

From April to May, 1996, Officer Knight, the Unit 10 counselor, would call Ms. Peddle into his office upon Officer Cephas's request. Sometimes Officer Knight offered to leave his office so that Officer Cephas could be alone with Ms. Peddle. On other occasions, Officer Cephas would instruct Ms. Peddle to go to a small room in the safety department. The officer stationed in that room would then

leave the room so that Officer Cephas could be alone with Ms. Peddle. Officer Cephas would then grope Ms. Peddle's breast and groin areas.

In May, 1996, Ms. Peddle became a resident of the Bridge Program, housed in Unit 11, which offers treatment and counseling for female inmates who have been victims of chronic sexual, physical, or emotional abuse. At this time, Officer Cephas was reassigned to the midnight to 8 a.m. shift in Unit 11, and he regularly woke Ms. Peddle and took her to the TV room or stairwell where he compelled her to submit to oral and vaginal sex.

On May 25, 1996, after requiring Ms. Peddle to perform oral sex, Officer Cephas was arrested by FBI officers. On October 28, 1996, Officer Cephas pled guilty to six counts of sexually abusing a prison inmate.

### DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. *Exhaustion of Administrative Remedies*

The defendants seek dismissal of Ms. Peddle's action, claiming that she has failed to satisfy the requirement to exhaust her administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), which amended 42 U.S.C. § 1997e. Pub.L. No. 104–134, 110 Stat. 1321. In relevant part, amended Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Defendants argue that Ms. Peddle must exhaust her administrative remedies because the PLRA amendment makes the exhaustion requirement a mandatory rather than discretionary precondition to filing a suit concerning prison conditions.[1] *Salahuddin v. Mead,* 174 F.3d 271, 274, n. 1 (2d Cir.1999). According to the defendants, Ms. Peddle's action concerns her prison conditions because she alleges that the defendants failed to prevent and to protect her from Officer Cephas's conduct, that they allowed cross-gender pat searches, that they failed to follow and enforce BOP policies relating to the sexual abuse of female inmates, and that they failed to train and properly discipline prison officers.

■ Ms. Peddle does not dispute that exhaustion is a mandatory requirement to filing a claim concerning prison conditions. However, she argues that her allegations relate to her sexual assault by a prison guard, which does not constitute a claim concerning prison conditions. Drawing all reasonable inferences in favor of the pleader, Ms. Peddle has alleged that the defendants intentionally furthered Officer Cephas's ability to sexually assault her and therefore were responsible for his continuing sexual assault of her. Severe and repetitive sexual abuse of an inmate by a prison officer is not part of the penalty

---

1. Prior to the 1996 amendment, Section 1997e required exhaustion only in cases where it was determined by the court that exhaustion would be "appropriate and in the interests of justice."

that criminal offenders pay for their offenses against society and constitutes a cognizable claim of cruel and unusual punishment in violation of the Eighth Amendment. *Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997).

Supreme Court precedent recognizes a distinction between prison conditions and instances of excessive force where contemporary standards of decency are violated. *See Hudson v. McMillian,* 503 U.S. 1, 90, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (distinguishing claims of conditions-of-confinement from those of excessive force by prison officials).

■ As Ms. Peddle points out, district courts have held that claims of excessive force involving an intentional assault of a prisoner by a prison guard do not constitute actions concerning prison conditions. *See White v. Fauver,* 19 F.Supp.2d 305 (D.N.J.1998) (the term "prison conditions" does not encompass intentional physical attacks, conspiracy to use excessive force, or threats of further physical violence to conceal prior attacks); *Rodriguez v. Berbary,* 992 F.Supp. 592, 593 (W.D.N.Y.1998) (assault claims are not claims that challenge the conditions of a prisoner's confinement). This Court agrees that claims of excessive force are not subject to the PLRA exhaustion requirement.

Since Section 1997e does not provide a definition to the term "prison conditions," the Court will interpret the statute according to its plain language, which is assumed to carry an ordinary, contemporary common meaning, and according to the statute's legislative history. *Greenery Rehabilitation Group v. Hammon,* 150 F.3d 226, 231 (2d Cir.1998).

■ According to its common sense meaning, the phrase "prison conditions" does not encompass an intentional assault in violation of the Eighth Amendment. *White,* 19 F.Supp.2d at 315. Assault claims are distinguishable from claims concerning the adequacy of food, clothing,

shelter and medical care. *Rodriguez,* 992 F.Supp. at 593.

Furthermore, the legislative history indicates that excessive force actions involving intentional assaults by prison employees were not intended to be the subject of Section 1997e's exhaustion requirement. The PLRA amendment to Section 1997e(a) was directed at limiting burdensome, frivolous prisoner lawsuits as exemplified by one prisoner's action concerning service of chunky rather than creamy peanut butter. *See* 141 Cong.Rec. S14, 408–01, *S14, 413 (daily ed. Sept. 27, 1995) (statement of Sen. Dole). Thus, allegations related to sexual abuse in violation of the Eighth Amendment are not contemplated by Section 1997e as claims concerning prison conditions requiring exhaustion.

The Court notes that some of Ms. Peddle's allegations may not establish an Eighth Amendment violation when viewed in isolation. However, the Supreme Court has instructed that allegations of Eighth Amendment claims should be considered "in combination" where the allegations have a mutually enforcing effect that produces the deprivation of a single identifiable need. *See Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

In this instance, Ms. Peddle's allegations of the defendants' allowance of repeatedly inappropriate groping or touching during pat searches, their failure to enforce BOP policies, and their failure to train and properly discipline prison officers produce "in combination" the deprivation of the right to be free from cruel and unusual punishment. Accordingly, the Court finds that all of Ms. Peddle's allegations relate to her intentional assault in violation of the Eighth Amendment rather than to her conditions of confinement. Therefore, Ms. Peddle's action is not subject to the exhaustion requirement of Section 1997e.

### B. *Substantive Due Process Claim*

■ In count two, Ms. Peddle asserts that the defendants violated her right to

substantive due process pursuant to the Fifth Amendment. Specifically, Ms. Peddle alleges that the prison officials' harassment and facilitation of Officer Cephas's conduct violated her substantive due process right to be free from sexual abuse.

Defendants urge dismissal of this claim, arguing that Ms. Peddle's allegations are subject exclusively to the Eighth Amendment, which provides an explicit constitutional protection to her claims. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (the generalized notion of substantive due process did not apply where the Fourth Amendment provided specific protections to the claim).

Ms. Peddle counters that she should be allowed to plead under both the Fifth and Eighth Amendments since some of her allegations are not clearly covered by the Eighth Amendment.

The Court recognizes that a general due process claim is appropriate where a more specific source of protection is absent or open to question. *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Stevens, J. dissenting); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (where Fourth Amendment did not apply to high speed police chase, substantive due process analysis was appropriate). However, in this instance, Ms. Peddle's claims are covered by the Eighth Amendment.

The Supreme Court has stated that the substantive due process protections afforded convicted prisoners against excessive force by the Fifth Amendment are redundant of the protections provided by the Eighth Amendment. *See Graham*, 490 U.S. at 395 n. 10, 109 S.Ct. 1865; *See also Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (the Eighth Amendment imposes duties on officials to take reasonable measures in order to guarantee the safety of inmates).

Although Ms. Peddle's allegations may not each be covered by the Eighth Amend-

ment, as discussed, her allegations establish "in combination" a violation of Ms. Peddle's constitutionally-protected right to personal safety. *See Wilson*, 501 U.S. at 304, 111 S.Ct. 2321. Since the allegations of count two are covered by the Eighth Amendment, this count will be dismissed.

## C. Violence Against Women Act ("VAWA")

In count four, Ms. Peddle asserts a claim against all of the defendants pursuant to the VAWA, which provides a right to be free from crimes motivated by gender. 42 U.S.C. § 13981(b). Ms. Peddle alleges, *inter alia*, that the defendants' knowing disregard of the risk of harm to Ms. Peddle from Officer Cephas's conduct created a policy or custom under which Ms. Peddle's right to be free from sexual abuse occurred; that they failed to evaluate train, discipline or properly supervise correctional employees; that they were grossly negligent in supervising subordinates; and that they failed to protect her after learning of the ongoing violations of her rights. Defendants assert that Ms. Peddle has failed to establish a cognizable VAWA claim.

Section 13981(c) creates a cause of action against "a person" who commits a crime of violence motivated by gender. In order to state a such claim under the VAWA, Ms. Peddle must allege that the defendants committed a "crime of violence," which is defined as an offense constituting either (1) a felony against the person, or (2) a felony against property if the conduct presents a serious risk of physical injury to another, and would come within the meaning of state or federal offenses described in 18 U.S.C. § 16. 42 U.S.C. § 13981(d)(2)(A). Section 16 defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person

or property of another may be used in the course of committing the offense."

Additionally, Ms. Peddle must allege that she was a victim of a gender-motivated crime, which is defined as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victims's gender." 42 U.S.C. § 13981(d)(1). The statute does not require a prior criminal complaint, prosecution, or conviction to establish the elements of a cause of action. 42 U.S.C. § 13981(e)(2).

Ms. Peddle urges the Court to treat her VAWA claim as it would other civil rights remedies such as Section 1983 and apply the theory of supervisory liability. She sets forth that Officer Cephas's sexual misconduct constitutes a felony offense pursuant to 18 U.S.C. §§ 2242 and 2244 that is a motivated by gender, and that the defendants, as his supervisors, are liable for his misconduct. *See Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir.1991) (supervisors may be held liable under Section 1983); *See also Marshall v. Switzer*, 900 F.Supp. 604, 610–11 (N.D.N.Y.1995) (recognizing supervisory liability in the context of a Section 1983 action related to a statutory violation).

Defendants argue that dismissal is proper because none of the named defendants is a person who committed a crime of violence motivated by gender within the express language of Section 13981(c). The defendants do not challenge Ms. Peddle's characterization of Officer Cephas's conduct but assert that Officer Cephas's crime of violence may not be imputed to the defendants, and therefore, none of Ms. Peddle's allegations may be construed to support even an inference that the defendants committed the predicate felony offense required by the VAWA.

The VAWA, enacted in 1994, is a relatively new statute, and the applicability of supervisory liability appears to be an issue of first impression. To date, no case law has recognized a VAWA action against anyone but the individual who actually committed the crime itself.

Nevertheless, this Court agrees with Ms. Peddle that the cause of action pursuant to the VAWA is analogous to the cause of action provided by Section 1983. As Ms. Peddle points out, the VAWA established a federal civil rights cause of action in order to protect the civil rights of victims of gender motivated violence. 42 U.S.C. § 13981(a). It is "a civil rights remedy in the tradition of Sections 1981, 1983 and 1985(3)." S.Rep. No. 101–545, at 41 (1990). It affords victims of gender violence the same right of private redress in federal courts already afforded to victims of employment discrimination and civil rights violations. *Doe v. Mercer*, 37 F.Supp.2d 64, 69 (D.Mass.1999).

■ Thus, application of supervisory liability is appropriate in this instance. However, a defendant may not be held liable merely because he or she holds a high position of authority. *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir.1996). Ms. Peddle must demonstrate some personal responsibility on the part of the defendant supervisors for the deprivation of her rights. *Moffitt*, 950 F.2d at 886.

■ Supervisory officials may be personally involved in the alleged deprivation of rights where (1) the defendant directly participated in the alleged infraction; or (2) the defendant, while acting in a supervisory capacity, either (a) failed to remedy the alleged wrong after learning of the violation, (b) created a policy or custom under which the unconstitutional practices occurred or allowed such policy or custom to continue, or (c) was grossly negligent or displayed deliberate indifference to the plaintiff's rights in managing subordinates who actually caused the constitutional deprivation. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986).

■ In this instance, Ms. Peddle sets forth that the defendants assigned Officer Cephas, whom they knew or should have known had a history of sexual misconduct,

to posts where he had prolonged and unsupervised contact with female inmates, including the overnight shift in the sexual trauma unit. Taking these allegations as true, Ms. Peddle has established that the defendants created a policy or custom of tolerating violations of inmates' rights by continuing to employ Officer Cephas to guard female inmates at FCI despite the risk of his sexual misconduct. *See Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.1980) (an official policy or custom may be inferred where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps); *See also Williams v. Smith*, 781 F.2d 319, 324 (2d Cir.1986) (the frequency of the violations indicated that the superior accepted a custom or policy of allowing the unconstitutional practice to occur). Additionally, defendants' assignment of Officer Cephas to the overnight shift in the sexual trauma unit, despite their knowledge of his sexual misconduct, is sufficient to establish gross negligence. Therefore, Ms. Peddle's fourth count will not be dismissed.

### CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is DENIED IN PART and GRANTED IN PART [doc. # 16]. Since Ms. Peddle's action is not subject to the exhaustion requirement of Section 1997e as amended by the PLRA, the entire action will not be dismissed. The motion to dismiss is GRANTED as to count two, alleging violation of the Fifth Amendment, but DENIED as to count four, alleging violation of the VAWA.

Plaintiff is directed within 15 days of receipt of this ruling to amend her complaint to conform the remaining counts to comport with this ruling.

SO ORDERED.